THEODORE LUMAN, Clerk Circuit Court for Allegany County vs. THE HITCHENS BROTHERS COMPANY OF FROSTBURG, MD.

*Constitutional Law—Title of Statute—Equal Protection of the Law—
Prohibiting Directors of Mining Corporations from Selling
Goods, Wares and Merchandise.*

The title of the Act of 1898, ch. 493, was " An Act to prohibit railroad and mining corporations, their officers and agents, from selling or bartering goods, wares or merchandise in Allegany County to their employees."    In the body of the Act it was made unlawful for railroad or mining corporations to sell goods, wares or merchandise, and for the officers and directors of such corporations to have any interest in any general merchandise store or to sell to any person any goods, wares or merchandise.    *Held*, that the act is void because in violation of the Constitution, Art. 3, sec. 29, which provides that the subject of every law shall be described in its title.

A statute which imposes upon one person or class of persons a disability or burden not similarly borne by others, denies to such persons the equal protection of the law and is unconstitutional, unless the classification of the persons upon whom the disability is imposed is just and reasonable.

The Act of 1898, ch. 493, provided that it should be unlawful for any officer or director of a railroad or mining corporation doing business in Allegany County to have any interest in any general merchandise store in that county or to sell goods, wares or merchandise therein. *Held*, that the statute is void because in conflict with the 14th Amendment of the Federal Constitution in that it makes an arbitrary and unreasonable classification of the persons who may sell goods, wares or merchandise.

Appeal from a *pro forma* order of the Circuit Court for Allegany County directing the issue of a writ of *mandamus.*

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and BOND, JJ.

*Robert R. Henderson* and *R. M. Luman,* for the appellant.

The State can, in the original charter, and therefore in any amendment in its unlimited power over corporations, say that certain persons cannot hold stock therein. It can, therefore, by a general law, which is in effect an amendment to the charter of every corporation of a certain character, accomplish the same purpose. *State* v. *Northern Central R. Co.,* 44 Md. 167; *Shaffer et al.* v. *Union Mining Co.,* 55 Md. 79. Such a law is nothing more than a regulation of a creature of the Legislature over which, under our present constitution, it never loses its absolute control. It can absolutely wipe out the corporation at any time. Why then, pray, cannot the Legislature say no railroad or mining corporation, or officer thereof, can have any interest in a general store? *American Coal Co.* v. *Consolidation Coal Co.,* 46 Md. 15.

The Legislature being the *sole judge* of the *necessity for the exercise of the police power,* we have but to inquire whether the means adopted in the Act in question are "calculated, intended, convenient and appropriate to accomplish" the end in view. The end in view is sufficiently set out in the preamble—"to prohibit railroad and mining corporations, their officers and agents, from selling or bartering goods, wares, or merchandise in Allegany County, to their employees." And in section 5, " this law is hereby declared to be a law to prevent employers from controlling the trade of their employees, or coercing or directing them to any certain store." Whether the necessity for such a law exists is not a judicial question, but it may be said, in passing, that that evil sought to be remedied is a growing and crying one in all communities where considerable bodies of laborers

are employed by large corporations. This is especially so in more or less rural communities, like the mining regions in Allegany County, where competition is not unlimited. The mining corporation or its officers, set up a general store, and its hundreds 'of laborers are soon notified of the fact. Any one possessing an ordinary knowledge of human nature and of the motives governing human conduct can predict what will follow. The laborer knowing or fearing that he will lose his job if he deals where he pleases, goes to the company store. For the same reason he will pay a greater price for articles there than they are worth in the open market. He is encouraged to buy more than he needs so as to eat up all his wages, and at the end of the month he has no ready money.

The appellee admits that a law prohibiting a mining corporation from carrying on mercantile business would be good. Such a law has, in fact, been in force since 1868. See Code, Article 23, section 202. But, evidently, this did not accomplish the end. How could it? All that it was necessary to do to still keep the men in a state of subjection was to have the store run in the name of the boss miner or other officer. The effect on the minds of the men would be precisely the same. Finding therefore, by experience, that its existing law was inadequate, the Legislature went at once to the root of the matter. The people must be got at who are in a position of power over the men—who hold in their control their livelihood—to-wit; *the officers* of the companies. If these cannot be prohibited from selling to their men, then the law is in principle and has been found to be in practice useless. The means adopted are therefore not only convenient but are the only efficacious means. And the liberty and comfort of the laboring classes are unquestionably within the scope of the police power. This Act does not, it is true, interdict the holding of stock by officers of mining and railroad corporations only in those stores selling to the employees of such companies, but is general, so far as the county is concerned. But this is proper, and

perhaps necessary to eradicate the evil. The limits of a single county are not too great to permit of evasions of the law if it were not very broad.

Under the decision of *State* v. *Northern Central Ry. Co.*, 44 Md., page 167, the first two sections of the Act in question may be considered as an amendment of the charter of Hitchens Bros. Co., and that charter is now to be construed as containing a provision that said company cannot obtain a license to sell merchandise until it make a certain affidavit.

*Benjamin A. Richmond* and *Wm. C. Devecmon*, for the appellee.

We submit that both sections 1 and 2 are unconstitutional and void under both the Federal and State Constitutions; that the Act so far as these two sections are concerned is void under the Constitution of the United States, because : (*a*). It impairs the obligations of contracts and is therefore inhibited by sec. 10 of Article 1 of the Federal Constitution. (*b*). It deprives the appellee and its stockholders of their liberty and property without due process of law, and is therefore obnoxious to the Fifth Amendment of the Constitution. (*c*). It denies to the appellee and its stockholders the equal protection of the laws, and is therefore vicious under the last clause of the 14th amendment of that instrument.

And that it is void under the Constitution of this State, because : (*a*). It deprives the appellee and its stockholders of their liberty and property without trial and without due process of law, contrary to Art. 23 of the Declaration of Rights. (*b*). It is vicious class legislation and an unreasonable exercise of legislative power divesting vested rights. (*c*). It embraces subjects not at all described or referred to in its title.

The professed object of the bill, as we gather from its title, is to prohibit railroad and mining corporations, their officers and agents, from selling goods, wares or merchandise in Allegany County to their employees. The first section,

however, attempts to do a wholly different thing. It flatly prohibits such companies or their officers, managers, super-intendents or directors, from having any interest in any store or merchandise business at all, in any part of Allegany County. And this, too, irrespective of the question whether the employees of such companies deal at such stores or not. It strikes down indescriminately all stores in which a direc-tor may have any interest in the whole county. In order to reach the supposed evil in particular cases, it covers a hun-dred other cases in which the evil does not and cannot exist.

So far as the railroad or mining company itself is con-cerned, it being the mere creature of the State, we concede that it would be competent for the Legislature to prescribe that it should not be interested in merchandising. The State gave it life, made its charter and can amend it and pre-scribe what it can or cannot do. *Shaffer* v. *Union Mining Co.*, 55 Md. 77. And this is so, no matter what may have been the mischief intended to be reached. But " a corporation has no inherent or natural rights like a citizen. " *Ibid.*, 79. " The right to follow any of the common occupations of life is inalienable. *Allegeyer* v. *Louisiana*, 165 U. S. 589. See also *Clark* v. *Md. Institute*, 87 Md. 660; *Ulman* v. *Mayor*, *etc.*, *of Balto.*, 72 Md. 592.

Here, then, is a case exactly within the foregoing inhibi-tion. Certain individual persons, resident and non-resident of Maryland, who differ in no respect from other persons and individuals, except that they happen to be officers of a cer-tain kind of corporation, and therefore a class, are forbidden to have a store or any interest in a store in Allegany County. All other individuals or classes of individuals, such as lawyers, doctors, officers of other corporations, etc., may acquire, hold and enjoy this kind of property ; but for persons of this particular class to do so is made a crime. They can own any other kind of property or own stock in any other kind of a corporation, but they cannot buy, own or hold stock in a merchandising corporation. The Act not only prohibits them from acquiring it, but makes it a crime

for them to have owned it at the time of the passage of the Act. It strikes down their title to the stock. Their relation as a stockholder to the merchandising company is one of contract under their stock subscriptions. This relation is made unlawful. Their contract and the contract of the merchant corporation is therefore struck down by the Act. It therefore impairs the obligation of a contract and is void. *Sec .10, Art. 1, Constitution U. S.* It being a crime for officers in these particular corporations to own stock in a merchandising corporation, they must rid themselves of it, even if they have to give it away. The Act, therefore, deprives them of their property without due process of law, or any process, except the bare *fiat* of the Legislature.

It deprives the citizen of his *liberty* in the important particular of owning and enjoying the same kind of property and enjoying the same kind of business as other persons can own and engage in, and is, therefore, obnoxious to both the Federal and State fundamental law. *14th Amendment, Constitution U. S.; Art. 23, Declaration of Rights.*

It makes no difference that the merchandising corporation may have its store fifty miles from the coal mine, and that it sells no goods to the coal company's employees, or that the officer of the coal company, owning stock in the store company, resides in China. All are struck down alike. Persons and corporations, wholly innocent of the supposed evil, intended to be affected by the Act, are deprived of their liberty and their property, hampered in their business, and their contracts broken up by one broad, sweeping Act of the Legislature. Business relations which have been perfectly lawful and innocent for all past time, and which do not now affect in the slightest the supposed evil, and have no connection with it, are made of themselves unlawful and a crime, without a discrimination. Like the order of Herod, all are included in an indiscriminate slaughter in order to accomplish the destruction of one. The cases, both Federal and State, which have held such legislation unconstitutional and vicious, are numerous, but we refer especially

to the following : *Jacobs' case*, 98 N. Y. 98 ; *People* v. *Marx* 99 N. Y. 377 ; *Gilson* v. *People*, 109 N. Y. 389 ; *Long* v *State*, 74 Md. 572 ; *Union Co.* v. *Crescent City Co.*, 111 U. S. 746 ; *Toledo* v. *City of Jacksonville*, 67 Ill. 37 ; *Millet* v. *People*, 117 Ill. 294 ; *Godcharles' case*, 113 Pa. St. 431 ; *Goodwill's case*, 33 W. Va. 179–188 ; *Mugler* v. *Kansas*, 123 U. S. 623 ; *Ex parte Westerfield*, 55 Cal. 550 ; *Ragid* v. *State*, 86 Tenn. 272 ; *State* v. *Divine*, 98 N. C. 778 ; *Budd* v. *State*, 3 Humph. 483.

It is not shown that the appellee is selling goods to the employees of any railroad or mining company, or that any one is coercing or even soliciting any such employee, to deal at its store. The appellee is, therefore, not an offender against the object of the Act. It is entirely innocent, so far as the record discloses. It has even tried to buy out the stockholder, who is a mining company director, but he will not part with his stock. It must have a license to continue business. It applies for it and is met by the second section of the law, which requires it to make an affidavit, which, through no fault of its own, it cannot make. It must, therefore, go out of business, and abandon all the objects of its charter. It cannot even dispose of the goods on hand without a license, and this it cannot get because of this law. It must, therefore, lose not only its business, but its property, and the stock of all its stockholders is rendered worthless. Can this be done by a legislative Act ? Has the Legislature the power to thus accomplish the ruin of citizens of the State ? If it has, the boasted protection of our constitutional barriers is a miserable rope of sand. Property can be taken and the citizen deprived of his liberty of action without due process of law, or any law except an Act of the Legislature. The obligation of certain contracts can be impaired, and the equality of the laws can be denied with impunity to certain citizens. Every fancied wrong can be remedied in the same way, until all we have will be held at the mere pleasure and whim of the Legislature. *Watertown* v. *Mayo*, 109 Mass. 315 ; *Slaughter House Cases*, 16 Wall, 36, 87.

The Act is also void because it embraces more subjects than are set out in the title.   *Scharf* v. *Tasker*, 73 Md. 384.

McSHERRY, C. J., delivered the opinion of the Court.

The proceedings in this case are designed to test the constitutionality of chapter 493 of the Acts of the General Assembly of this State, passed at the January session of 1898.   The title of the statute is in these words: "An Act to prohibit railroad and mining corporations, their officers and agents from selling or bartering goods, wares or merchandise in Allegany County to their employees."   The first section enacts: " That it shall not be lawful for any railroad or mining corporation, doing business in Allegany County, nor for the president, vice-president, manager, superintendent, any director or other officer of such corporation, to own or have any interest in any general store or merchandise business in Allegany County, in which goods, wares and merchandise are sold, nor to conduct or carry on any such business, or have any interest in the profits of the same in Allegany County, nor to sell or barter any goods, wares or merchandise in such county."   The remaining sections are set forth in the margin.*   The appellee is a

---

* Section 2.   That it shall not be lawful for the Clerk of the Circuit Court for Allegany County to issue a trader's license to any corporation or person or persons to sell goods, wares or merchandise unless he shall first administer to the party applying therefor an oath that no railroad or mining company, or president, manager superintendent or any director or other officer of such corporation has any interest directly or indirectly in such store or business or the profits thereof proposed to be carried on under said license.

Section 3.   That any store or business conducted in Allegany County by railroad or mining corporations or private individuals engaged in railroading or mining, in which goods, wares or merchandise are sold to the employees of the owners of such store or business in part payment of their wages, as such employees, shall be subject to a suit at law for damages by the employee purchasing such goods and be liable to the said employee in a sum of money equal to the amount paid for such goods, wares or merchandise bought by such employees.

Section 4.   That any such mining corporation, who, through its stockholders or officers, by any rule or regulation of its business, shall

trading corporation. One of its stockholders is a director in the Barton and George's Creek Coal Company, a mining corporation of Allegany County. By the general laws of the State, before a person or a corporation can lawfully conduct a merchandising business in any county, a trader's license must be procured from the Clerk of the Circuit Court. In the latter part of April, eighteen hundred and ninety-nine, application was made by the appellee to the appellant, who is the Clerk of the Circuit Court for Allegany County, for a trader's license. The Clerk refused to issue the license unless the oath prescribed by the second section of the Act, now under review, was first taken by some officer of the appellee corporation, but the treasurer of the appellee refused to make the oath because one of the stockholders of the Hitchens Brothers Company was a director in a mining corporation. Thereupon the Clerk declined to issue the license applied for by the appellee, and the latter filed in the Circuit Court a petition praying that a *mandamus* might go out directing the Clerk to issue the license. Ultimately, a *pro forma* order was passed, requiring the Clerk to deliver the license ; and from that order this appeal has been taken.

---

make any contract with the keepers or owners of any other store whereby the employees of such corporation shall be obliged to trade with such keeper or owner, shall be guilty of a misdemeanor, and upon conviction, shall be subject to damages to said employee to the extent of the amount of goods purchased from such store ; proof of such contract between the mining corporation and the store-keeper shall be *prima facie* evidence of the fact that such store is under control of such mining corporation, and in violation of the provisions of this Act.

Section 5. That any corporation or person who shall violate any of the provisions of this law, which is hereby declared to be a law to prevent employers from controlling the trade of their employees or coercing and directing them to any certain store, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than fifty dollars nor more than five hundred dollars, and the license of such corporation, person or persons shall be suppressed.

Section 6. That this Act shall take effect on the first day of January, 1899.

The validity of the statute has been assailed upon a number of grounds, some of which will now be considered.

The title declares that the Act is an Act to prohibit railroad and mining corporations, their officers and agents, from selling goods, wares and merchandise to their employees ; whereas, the body of the Act makes it unlawful not only for a railroad and a mining corporation to sell or barter any goods, wares or merchandise, but for any president, vice-president, manager, superintendent, director or other officer of such corporations to own or have any interest whatever in any store or merchandise business in Allegany County, without the slightest reference to whether sales are made to the employees of railroad or mining corporations or not. There are two things prohibited in the body of the Act under a title indicating a purpose to prohibit but one thing ; and that one thing is a wholly different thing from the two which are prohibited.    The *title* relates to sales to *employees ;* the *body* of the Act prohibits railroad and mining corporations from selling at all ; and it also, without qualification, prohibits the designated officers from having any interest in any store, and from selling to *any* person any goods, wares or merchandise in the county.    The title indicates that the Act is designed to provide a restricted prohibition, whilst the body of the Act declares an unrestricted prohibition.  A provision forbidding a sale to employees is widely different from, because much narrower than, a provision forbidding a sale to any one. Though the title need not contain an abstract of the bill, nor give in detail the provisions of the Act, it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the Act is made to compass ; nor must there be cloaked in the enactment any foreign, discordant or irrelevant matter not disclosed in the title.    No one reading a title which was confined to a prohibition against particular persons selling to their *employees* would ever infer that the thing actually prohibited in the Act itself was a sale by those persons to *any* one. The wisdom of requiring the title to disclose the subject of the statute and confining the

Act to that one subject is illustrated by the legislation now before us. It may well be (assuming such legislation would be free from other infirmities) that there could be no objection to prohibiting officers of railroad and mining corporations from selling merchandise to their employees, whilst there would be very serious objections to prohibiting such officers from selling to other persons. The Act goes far beyond the purpose declared in its title, and in this respect disregards the provisions of *sec. 29, Art. 2* of the Constitution of Maryland, which declares " that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." *Scharf* v. *Tasker*, 73 Md. 378. We have before us now the reverse of the situation which was presented in *Drennen* v. *Banks*, 80 Md. 318. In that case there were two component parts of one title. Both of these were comprehensive enough to include under either, the whole of the enacted legislation ; but it was insisted that the use of the two, narrowed the scope of the title, and that therefore the body of the Act was wider than the title, as thus narrowed, indicated. This contention was not adopted and it was held that two universal propositions could never be equivalent to a particular proposition—that the two general titles, neither being the contrary of the other, continued to be general when used together, and did not become more restrictive, when conjoined, than either would have singly been. In the case at bar the title of the Act relates to a particular prohibition and the effort is to include under that a general, or at least, a very much broader prohibition in the body of the Act.

But we need not pursue this discussion farther, because there is another objection equally apparent and equally fatal to the Act, and that objection is founded on the Fourteenth Amendment to the Constitution of the United States. Section one of that amendment guarantees the equal protection of the laws to all persons alike. It applies to corporations as well as to individuals. *Railroad Co.* v. *Ellis*, 165 U. S. 150. A statute which denies to one per-

son the protection that is accorded to others under the same conditions and in the like situation, or which imposes on one a burden not similarly borne by others, is, because it so discriminates, in both instances, invalid under the paramount organic law.    Though it was perfectly competent to the Legislature to prevent railroad and mining corporations from engaging in the business of bartering or selling goods, wares and merchandise, either by not conferring such a power upon them in their charters, or, if it had been conferred then, by subsequently amending the charters and imposing the restriction by such an amendment; yet, it was obviously not within the power of the General Assembly to deny to particular individuals who happened to be officers of those corporations, and merely because they were such officers, the right which every other citizen of the county, whether an officer of other corporations or not, possessed to sell goods, wares and merchandise within the county.    Whilst the Legislature may, under conditions, create classes and subject all persons coming within the classifications to burdens or duties not imposed upon individuals outside of the classes, these classifications must not be arbitrary or unreasonable, but must rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed.    It may not single out the directors of one corporation, and solely because they are such directors, prohibit them from engaging in some other business open to the directors of all other corporations ; any more than it can by a general enactment, not passed in the exercise of the police power, burden one corporation with a liability from which other corporations of the same kind under precisely similar circumstances are relieved.    " The State may not say that all white men shall be subjected to the payment of the attorneys' fees of parties successfully suing them, and all black men not.    It may not say that all men beyond a certain age shall be, alone, thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper

basis for the attempted classifications." *Railroad Co.* v. *Ellis, supra.*

Assuming that the Act of 1898 does no more than prohibit an officer of a railroad or mining corporation from selling goods, wares and merchandise to the company's employees, the inquiry is presented whether the sale of goods by a person who is an officer of a mining or a railroad corporation to an employee of that company differs in substance and in principle from a sale of goods by an officer of any other corporation to an employee of the latter company. "The purpose is, manifestly, the same in each case, namely, the sale by the employer to the employee of the articles designated ; and it requires precisely the same elements to constitute a contract—including mental capacity in the parties contracting, and freedom from fraud and overreaching—in the one case as it does in the other." *Frorer* v. *People*, 141 Ill. 171 ; *S. C.*, 16 L. R. A. 492. There can be no reason why an officer of a railroad or a mining corporation should be restrained by statute from selling to an employee of either of those companies any goods, wares and merchandise that does not with equal force apply to an officer of any other corporation which employs similar labor. The owner of a mine and the operator of a railroad have no other control over the employee "than that which may result from employing him, or continuing him in employment, or refusing to do so ; and every other employer of labor has precisely the same control over those who obtain or wish to obtain employment with him. There can be no reason why the miner or the operative on a railroad will be more or differently influenced by his hopes or fears in these respects than will laborers in any other industries.    *    *    *    *
There is nothing in operating mines or railroads to render the individual less capable to contract, or to give him greater wisdom and adroitness therein, than he would possess were he engaged in operating and controlling" a manufacturing establishment or conducting commercial pursuits or any other of the numerous branches of industry.

In each and all of these callings, vast numbers of both skilled and unskilled laborers are employed and their relations to their employers would seem to be under precisely the same conditions as are those affecting the relations between mine owners and officers of railroads on the one side, and their employees on the other. The prohibition which the statute contains is not imposed for the purpose of rendering mining and railroading less perilous or laborious, nor to restrict or regulate the duties of employer and employee in respects peculiar to those industries, but for the sole purpose of imposing disabilities in contracting as to the sale of goods, wares and merchandise—things about which all laborers must contract, and as to which officers and agents of all other corporations, and in every other branch of industry are permitted to contract with their employees without any restriction whatever. *Frorer* v. *People, supra.* See too *Millet* v. *People,* 117 Ill. 294; *State* v. *Goodwill,* 33 W. Va. 179; *Com.* v. *Perry,* 155 Mass. 117 (14 L. R. A. 325); *Railroad* v. *Ellis,* 165 U. S. 150, and cases therein referred to. We refer to these cases merely as illustrations without adopting all that they decide, and without intending, by alluding to them, to question the conclusion reached in *Shaffer & Munn* v. *Union Mining Co.,* 55 Md. 74.

This attempted classification in the Act of 1898 is obviously arbitrary, and was not made to rest, as we have above pointed out, upon some difference which bears a reasonable and just relation to the act—the thing—in respect to which the classification is proposed. The statute was not passed in the exercise of the police power of the State as was the case in *State* v. *Broadbelt,* 89 Md., 565, and in *Atch., T. & S. F. R. R.* v. *Matthews;* 174 U. S. 96, and is repugnant to the Fourteenth Amendment.

In *Shaffer & Munn* v. *Union Mining Co.,* 55 Md. 80, this Court quoted, with approval, the following passage from *Judge Cooley's Con. Lim.:* " If the Legislature should undertake to provide that persons following some specified trade or employment should not have the capacity to make

contracts    *    *    *    *    or in any way to make use of their
property as was permissible to others, it can scarcely be
doubted that the Act would transcend the due bounds of
legislation, even though no express constitutional provision
could be pointed out with which it would come in con-
flict.   To forbid an individual, or a class, the right to the
acquisition or enjoyment of property, in such manner as
should be permitted to the community at large, would be
to deprive them of *liberty*, in particulars of primary impor-
tance to their pursuit of happiness." It can scarcely be
contended that the statute which we are considering does
not violate this principle    The first section distinctly pro-
vides that a person who is an officer of a railroad or mining
corporation shall not, simply and solely because he is such
officer, conduct or be interested in any mercantile business
in Allegany County.  It is made unlawful for him to engage
in a lawful business.   The statute does not profess to amend
the charter of the appellee company or of any similar com-
pany; nor does it provide, even if it could lawfully so pro-
vide, that a person owning stock in a trading corporation
should, by reason of such ownership, be ineligible to act as a
railroad or mining company director; but in plain terms it
arbitrarily denies to a person, who is a railroad or mining
company official, the right possessed by every other individ-
ual whether an officer of other corporations or not, to
carry on or be concerned in the business of buying and sel-
ling goods, wares and merchandise.   It denies to designated
officers of two kinds of corporations the capacity to make con-
tracts and to use their property as confessedly is permissible
to all other persons who are not under some recognized
legal disability.   Such a denial of the right to engage in the
mercantile business, founded exclusively upon the fact that
the person denied that right occupies a position of trust in
a particular corporation, palpably transcends the due
bounds of legislation; and when assailed in a Court of jus-
tice it must inevitably fall. " Such legislation," as was well
said *in Re Jacobs*, 98 N. Y. 114, " may invade one class of

rights to-day and another to-morrow; and, if it can be sanctioned under the Constitution, while far removed in time, we will not be far away in practical statesmanship from those ages when governmental prefects supervised the building of houses, the rearing of cattle, the sowing of seed and the reaping of grain, and governmental ordinances regulated the movements and labor of artisans, the rate of wages, the price of food, the diet and clothing of the people, and a large range of other affairs long since, in all civilized lands, regarded as outside of governmental functions. Such governmental interferences disturb the normal adjustments of the social fabric, and usually derange the delicate and complicated machinery of industry, and cause a score of ills while attempting the removal of one."

The reasons we have given are quite sufficient, without assigning any others, to show that the legislation embodied in the Act of 1898, which is now before us, is absolutely void. The *pro forma* order was therefore right, and it is accordingly affirmed.

*Order affirmed with costs.*

(Decided November 23rd, 1899).