*(Circuit Court of Cook County.)*

People
vs.
Richards & Kelly Manufacturing Company.
And fifty-six other similar cases.

(December 12, 1900.)

1. STATUTES—REPEAL BY IMPLICATION. In 1891 the legislature passed an act in reference to trusts and combines. In 1893 this act was amended by adding two new sections. On the same day the legislature passed an entire new act upon the same subject. *Held*, that the act of 1893 did not repeal the act of 1891, as such was not the intention of the legislature.

2. CONSTITUTIONAL LAW—CLASS LEGISLATION. In 1897 the legislature amended section one of the act of 1891 by adding a proviso, that in the mining, manufacture or production of articles of merchandise the cost of which is mainly made up of wages, it shall not be unlawful to enter into joint arrangements of any sort, the principal object or effect of which is to maintain or increase wages:

*Held* (1) That section one as amended was in effect an amendment of the General Incorporation Law, and operated as an amendment of some but not all of the charters of the

corporations incorporated under that law and therefore was prohibited by section 2, article 2, of the constitution of 1870.

(2) That section one as amended was unequal and partial legislation forbidden at common law and in violation of the constitution of the state, and of the 14th amendment to the Federal constitution, which prohibits a state from denying to any person the equal protection of the laws. One judge dissenting upon the proposition that the entire section was void on account of the unconstitutional proviso.

3. CORPORATIONS—RESERVED POWER TO REGULATE. Nor can the act be justified by the provisions of section 9 of the General Incorporation Law, which reserves to the general assembly the power to regulate all corporations formed under the act. The legislature has the right to classify all corporations, but such classification must not arbitrarily discriminate between corporations in substantially the same situation.

4. STATUTORY CONSTRUCTION. In construing statutes the intention of the legislature is to be deduced from every part of the statute.

5. CONSTITUTIONAL LAW—EXEMPTION OF BUILDING AND LOAN ASSOCIATIONS. The exemption of building and loan associations from the operation of a law requiring corporations to make an annual report that they are not a party to a trust or combine is not an arbitrary classification and does not invalidate the law.

6. EVIDENCE—SELF-INCRIMINATION—IMMUNITY. Where the officers of a corporation are compelled to file an affidavit that the corporation is not a member of any trust or combine, and it is provided that no corporation or individual shall be subject to any criminal prosecution by reason of anything truthfully disclosed by such affidavit, the immunity clause is sufficiently broad to protect the corporation and its officers, and such law is not obnoxious to the provisions of section 10, article 2, of the Illinois constitution, which provides that no person shall be compelled in any criminal case to give evidence against himself.

7. SAME—CRIMINAL CASE. The term "criminal case" is broad enough to include any prosecutions for penalties or forfeitures.

8. CONSTITUTIONAL LAW—EFFECT OF UNCONSTITUTIONAL SECTION. The fact that one or more sections of a law are unconstitutional does not affect the entire law where the remaining sections make a complete law in themselves.

Actions of debt. Gen. No. 200,636 *et seq.* Heard on demurrer before Judges Arba N. Waterman, Murray F. Tuley and Edward F. Dunne sitting *en banc.*

Statement of case by court.

This is an action of debt brought under what is known as the anti-trust statute to recover the penalty of $50 per day for the failure of one of the defendant's officers to make answer to the letter of inquiry of the secretary of state as to whether the corporation had become a member of any trust, combination, etc.

In 1891 an act was passed by the general assembly, entitled "an act to provide for the punishment of persons, copartnerships or corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases."

Section 1 of that act, in substance, provided that if any corporation, partnership, individual or other association of persons should create or enter into and be a member of or a party to any pool, trust, agreement, combination, etc., "with any other corporation, partnership, individual or any other person or association of persons, to regulate or fix the price of any article of merchandise or commodity, or shall enter into, become a member of or a party to any pool, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this state, such corporation, partnership or individual or other association of persons shall be deemed and adjudged guilty of a conspiracy to defraud, and be subject to indictment and punishment as provided in this act." Other sections of the act imposed certain fines and penalties for violation of the act, running from $500 to $10,000, and authorized the recovery of the fine by an action of debt in the name of the people of the state of Illinois.

In 1893, on the 20th of June, a law was approved amending the act of 1891 by adding to it two sections, one known as section 7a, and the other as section 7b.

Section 7a provided, in substance, that "it shall be the duty of the secretary of state, on or about the first day of September of each year, to address to the president, secretary or treasurer of each incorporated company doing business in this state, etc., a letter of inquiry as to whether the said corporation has all or any part of its business, or interest, in or with

any trust, combination or association of persons or stockholders, as named in the preceding provisions of this act, and to require an answer under oath of the president, secretary or treasurer, or any director of said company," a form of affidavit, to be enclosed with the letter of inquiry as set out in the section. And, further provides that "on refusal to make oath in answer to said inquiry, or on failure to do so within thirty days from the mailing thereof," it shall be the duty of the secretary of state to certify the fact to the attorney general, whose duty it shall be to direct the state's attorney of the county wherein such corporation is located, and it shall be the duty of the state's attorney at the earliest practicable moment, in the name of the people, to proceed against such corporation, "for the recovery of a penalty of $50 for each day after such refusal to make oath or failure to make said oath within the thirty days from the mailing of said notice." Or, that the attorney general may "by any proper proceedings in a court of law or chancery, proceed upon such failure or refusal to forfeit such charter of such incorporated company * * * and to revoke the rights of any foreign corporation located herein to do business in this state."

Section 7b, in substance, provided that the secretary of state at any time, if satisfactory evidence came to him that "any company or association of persons * * * has entered into any trust, combination or association in violation of the preceding section of this act, to demand that it shall make the affidavit as above set forth in this act." (Section 7a.)

Then follows a saving clause as follows: "Provided, that no corporation, firm, association or individual shall be subject in any criminal prosecution by reason of anything truthfully disclosed by the affidavit required by this act, or truthfully disclosed in any testimony elicited in the execution thereof." And contains the further proviso, "Provided that corporations organized under the building, loan and homestead association laws of this state are excluded from the provisions of this act."

In 1897 another amendatory act was passed providing that

section 1 of the act of 1891 should be amended to read as follows:

"Section 1. Be it enacted by the people of the state of Illinois represented in the general assembly: That section one of an act entitled, 'an act to provide for the punishment of persons, partnerships, or corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases,' approved June 11, 1891, in force July 1, 1891, be amended to read as follows: If any corporation organized under the laws of this or any other state or country for transacting or conducting any kind of business in this state, or any partnership or individual or other association or persons whosoever, shall create, enter into, become a member of or a party to any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual or any other person, or association of persons, to regulate or fix the price of any article of merchandise or commodity, or shall enter into, become a· member of or party to any pool, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this state, such corporation, partnership or individual or other association of persons shall be deemed and adjudged guilty of a conspiracy to defraud and be subject to indictment and punishment as provided in this act;" and concluding with the following proviso (the addition of which proviso was the only change made in the section):

"Provided, however, that in the mining, manufacture or production of articles of merchandise, the cost of which is mainly made up of wages, it shall not be unlawful for persons, firms or corporations doing business in this state to enter into joint arrangement of any sort, the principal object or effect of which is to maintain or increase wages."

On the same day that amendment to the act of 1891 was passed, to-wit: the 20th of June, 1893, the legislature passed an act entitled, "an act to define trusts and conspiracies against trade," declaring contracts in violation of the provi-

sions of this act, and making certain acts in violation thereof misdemeanors and prescribing the punishment therefor, etc.

*Charles S. Deneen,* state's attorney for the People.

*Levy Mayer,* for defendants.

The court after making the foregoing statement rendered the following opinion:

Per Curiam:—

The demurrer to the declaration in this case raises the question of the constitutionality of the trust act of 1891, as amended by the acts of 1893 and of 1897, respectively, and whether the trust act of 1893 does not repeal the trust act of 1891.

It is contended that an act passed in 1893 defining "trusts and conspiracies against trade," etc., which it is alleged is a revision of the entire subject matter of trusts and conspiracies against trade, operates as a repeal of the act of 1891.

That the legislature did not intend such an effect is manifested by the fact that at the same session, on the same day, the act of 1891 was amended by adding two sections, to-wit: section 7*a* and section 7*b*, and that the legislature again in 1897 amended the act of 1891, treating in both amendments the act of 1891 as being in full force and effect.

It will be observed as a singular fact that while the act of 1893 defines trusts and conspiracies, etc., it does not in express terms prohibit the entering into or forming of such trusts and conspiracies. Sections 2, 3, 4 and 5 of this act prescribe certain penalties for violations of the act. As nothing is either commanded or prohibited therein, there can be no violation thereof. Except as an act defining a trust, it is an unique specimen of legislative abortion.*

We see no difficulty in construing the act of 1891, as amended, and the act of 1893, defining trusts and conspiracies, so that they can both stand, and are of opinion that there is not any fatal repugnance between the two.

*Note.—The act of 1893 was declared unconstitutional by the United States supreme court in *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540.—Ed.

Section 1 of the act of 1891, as amended in 1897, is unconstitutional and void for the following reasons:

First. Because, in its legal effect, it is an amendment of the general incorporation law authorizing the formation of corporations (chap. 32 of the Rev. Stat., entitled "an act concerning corporations"), and operates as an amendment to the charters of some, but not all, of the corporations incorporated under said general law, and, therefore, is a special law, prohibited by sec. 2, art. 2, of the constitution of 1870, which prohibits the creation, change, or amendment, by special law, of the charter of any corporation, excepting those for charitable, educational, penal or reformatory purposes.

By the same section (1), it is provided that "the general assembly shall provide by general laws for the organization of all corporations hereafter created."

In the general law passed in pursuance of that requirement of the constitution, there was in section 9 of the act a reservation as follows:

"The general assembly shall have at all times power to prescribe such regulations and provisions as it may deem advisable, which regulations and provisions shall be binding upon any and all corporations formed under this act."

Our supreme court has held that this general power must be exercised by general law, and cannot be exercised by a special law. *Braceville Coal Co. v. People*, 147 Ill. 66.

It is, however, urged on behalf of the plaintiff that the general assembly has the power to classify corporations for the exercise of the reserved power; to prescribe "such regulations and provisions as it may deem advisable," and also for the exercise of the police power of the state, and that section 1 of the act of 1891, as amended, is a proper classification of corporations for either of such purposes.

The power of the general assembly to classify corporations must be admitted, but is the classification contained in section 1 a proper or legal classification for either of such purposes?

The amendatory act of 1897 re-enacts, word for word, sec-

tion 1 of the act of 1891, and adds thereto the following proviso:

"Provided, however, that in mining, manufacture or production of articles of merchandise, the cost of which is mainly made up of wages, it shall not be unlawful for persons, firms or corporations doing business in this state to enter into joint arrangements of *any sort*, the principal object or effect of which is to maintain or increase wages."

While the general assembly has the power to classify corporations for the exercise of the reserved power contained in section 9 of the corporation act, or for the exercise of the police power of the state, and to determine what is a proper classification for such purposes, yet its determination is subject to review by the courts. *Frorer v. People*, 141 Ill. 171.

The power of the general assembly to classify corporations for either of the purposes aforesaid is subject to the limitation that such classification must not arbitrarily discriminate between corporations in substantially the same situation, and such determination must rest upon reasonable grounds. Arbitrary selection cannot be justified by calling it classification. *Gulf C. & S. F. R. R. v. Ellis*, 165 U. S. 150.

Section 1 of the trust act, as amended by the act of 1897, makes the attempt to separate certain mining and manufacturing corporations from all other corporations and to withdraw them from the operation of an act to which the latter are subject.

It is clearly an arbitrary discrimination between corporations, substantially of like character, objects and purposes, and no reason can be perceived why mercantile or transportation of other corporations organized for pecuniary profit should be prohibited from entering into any pool, trust or combination in restraint of trade, or to regulate prices of commodities, while mining and manufacturing corporations producing merchandise, the cost of which is mainly made up of wages, should be permitted to enter into joint arrangements of any sort, the effect of which should be to increase or maintain wages. Such a combination by either class would be equally injurious to the public.

Section 1, as amended, discriminates, not only between mining and manufacturing corporations, and all others, but also discriminates .between mining and manufacturing corporations engaged in the same business.  It divides them into two classes, those the cost of whose output or merchandise is mainly made up of wages; and those the cost of whose output is not mainly made up of wages.

The cost of the output of one manufacturing corporation may be made up of fifty-one per cent. wages, while that of another may contain only forty-nine per cent. of wages.  This law permits the former (fifty-one per cent.) to enter into any sort of combination and denies the right of the latter (forty-nine per cent.) to do so.  The fluctuations in the price of the raw material might change them from time to time from one class to the other, and thus their rights be determined by the fluctuations of the market for the raw material used by them, respectively.

The classification is one of degree, of the cost of raw material and labor, respectively, and is not based upon any reason or principle.

Second. Section 1, as amended, is unconstitutional for the further reason, that it is unequal and partial legislation which was forbidden at common law and cannot be sustained upon any principle of right or justice.

Says Judge Cooley, ''and, if the legislature should undertake to provide that persons following some specific trade or employment should not have capacity to make contracts, or to receive conveyances, or to build such houses as others are allowed to erect, or in any other way *to make such use of their property* as was permissible to others, it can scarcely be doubted that the act would transcend the due bounds of legislative power even though no express constitutional provision could be pointed out with which it would come in conflict. To forbid to an individual or a class the right to the acquisition or enjoyment of property, in such manner as should be permitted to the community at large, would be to deprive them of *liberty*, in particulars of primary importance to their 'pursuit of happiness,' etc.''  Cooley, Constitutional Limi-

tations, 561.   The same writer, in the same section, speaks of
"Equality of rights, privileges, and capacities" as a "funda-
mental maxim of government."

Legislation of this character making *arbitrary* classifications
and discriminations between persons or classes has been re-
peatedly held to be in violation of sec. 2, art. 1, of the state
constitution.

"No person shall be deprived of life, liberty or property
without due process of law."   The words "due process of
law" in this connection are held to be synonymous with "the
law of the land."

And this means general public law binding upon all the
members of the community under all circumstances and not
partial or private laws affecting the rights of private indi-
viduals, or classes of individuals.   *Millett v. People,* 117 Ill.
294.   See also *Frorer v. People,* 141 Ill. 171.

In the latter case the court says of the law under considera-
tion in that case, "the same act 'in substance and in principle,
if done by the one' is lawful, but if done by the other is not
only unlawful, but is a misdemeanor punishable by fine," and
holds the law unconstitutional; also holds that "under the
guise of the police power a person cannot be deprived of a
constitutional right," and that "it is impossible that under
that power what is lawful if done by A, if done by B, can be
a misdemeanor, the circumstances and conditions being the
same."   Among the decisions in this state, holding legislation
of this character unconstitutional, may be cited the following:
*Braceville Coal Co. v. People,* 147 Ill. 66; *Ritchie v. People,*
155 Ill. 98, and the decisions upon the Barbers' Act; *Eden v.
People,* 161 Ill. 296.

Such a law violates the 14th amendment to the Federal
constitution, which prohibits a state from denying "to any
person equal protection of the laws."   *Gulf C. & S. F. R. R.,*
165 U. S. 150; *In re Converse,* 137 U. S. 624; *Low v. Rees
Printing Co.,* 41 Neb. 127, 59 N. W. 362; *Luman v. Hitchens,*
90 Md. 14, 44 Atl. 1051.

Two of the judges are of the opinion that section one must
be held to have been amended by the Act of 1897, and that

as amended, it must be held unconstitutional and void for the reasons before stated.[1]

The principle of construction requires the sound interpretation and meaning of the statute, taking into consideration the enacting clause, the saving clause and provisos together with the title of the act. The intention is to be deduced from the whole and every part of the statute taken and compared together. *People v. Gaulter,* 149 Ill. 39; *Dupee v. Swigert,* 127 Ill. 494; *Mason v. Finch,* 2 Scam. 223; *Davis v. Hayden,* 3 Scam. 35; *People v. I. & M.,* 3 Scam. 153; *Belleville v. Gregory,* 15 Ill. 20; *Zarresseller v. People,* 17 Ill. 101; *Way v. Way,* 64 Ill. 406.

The other of the three judges holds as follows:

That the question as to whether section 1 of the act of 1891 is still in force is not necessary to a decision of the demurrer to the declaration in this case.

Also, that—as shown elsewhere in this opinion—all the virus of unconstitutionality of this trust act is to be found in the "proviso" contained in the amendment of 1897, and that section 1 may be preserved by holding the entire amendatory act of 1897 unconstitutional and void, or that the "proviso" may be rejected, because repugnant to the purview of the act or section, and cannot stand without rendering the act (or section) inconsistent and destructive of itself. The result would be the same in either case—that part of the law which is not obnoxious to the constitution stands,—while that part which infringes it is repealed. An amendatory act, which is unconstitutional and therefore void, should not be held to affect an original act which is constitutional. A void thing is no thing and can have no effect whatever.[2]

The judges concur in the opinion that the exemption of the loan and homestead association contained in the proviso to

---

[1] In so far as the court holds that the entire section as amended is void the decision is clearly erroneous. An unconstitutional amendment can have no effect on the original law.—Ed.

[2] The amendment of 1897 was afterwards declared unconstitutional in *Butler Street Foundry and Iron Co. v. People,* 201 Ill. 236.—Ed.

sec. 7b in the amendatory act of 1893, does not affect the validity of the act of 1891 as amended by the amendment of 1893.

That proviso must be held limited in its effect and operation to the provisions of the amendatory act, sec. 7a and sec. 7b. *De Graff v. Went*, 164 Ill. 485.

This construction will exempt loan and homestead associations only from the duty to make reports as required in such amendatory act. Loan and homestead associations are a class to themselves, different in many particulars from all other corporations. The general assembly has legislated for that class and has taken such supervision over them as rendered it in its opinion unnecessary that such associations should be brought under the operation of the act of 1891 as amended in 1893. The exemption or classification is not arbitrary and was within the power of the legislature. See the Commission Merchant case, 183 Ill. 226 (*Lasher v. People*).

It is contended by the defendants that the amendment made in 1893, sec. 7a, violates sec. 10 of art. 2, of the constitution, "No person shall be compelled in any criminal case to give evidence against himself."

This is substantially the same as the fifth amendment to the Federal constitution, "Nor shall any person be compelled in any criminal case to be a witness against himself."

There can be no doubt under the authorities as to the correctness of this position, unless the clause of the act granting immunity is broad enough to prevent any prosecution for penalties or forfeiture in any proceeding at law or equity founded upon or growing out of disclosures made by the affidavit required by said sec. 7a to be made in response to the letter of the secretary of state. The immunity clause under the statute is in the following language: "No corporation, firm, association or individual shall be subject to any criminal prosecution by reason of anything truthfully disclosed by the affidavit required by this act, or truthfully disclosed in any testimony elicited in the execution thereof."

In our opinion this clause is broad enough to protect the corporation and officer or officers making the affidavit, not

only against any criminal prosecution, strictly speaking, but also against any prosecution to collect any fine, or against any action of debt to recover any penalty, or against any proceeding at law or in equity to enforce a forfeiture of the charter of the corporation, which may be brought by reason of anything truthfully disclosed in the affidavit required in the act, or disclosed in any testimony elicited in the execution thereof.[1]

Whether the action or proceedings be in form criminal or civil, it is immaterial if it be brought to punish the corporation or the official; if the end sought is punishment the action or proceeding is *ex delicto* in its nature, and it may be classed as a criminal proceeding, whatever its form. *Boyd v. United States*, 116 U. S. 616, *Coffey v. United States*, 116 U. S. 436; *Counselman v. Hitchcock*, 142 U. S. 547; *Brown v. Walker*, 161 U. S. 591.

Our attention has been called to the case of *State of Missouri v. Simmons Hardware Co.*, 109 Mo. 118, 18 S. W. 1125, where a trust act was construed containing sections—it is alleged—of which the present section (7a) is a copy, in which case the court held the act unconstitutional, but we are unable to find that the Missouri statute contained any immunity clause whatever and is therefore not in point.

It is, however, contended by counsel for the defense that under this construction, if a corporation (or one of its officials) makes a report under the statute, showing it to be a party to a combination in restraint of trade, or to be in a trust, instanter the crime is disclosed, the corporation or official is absolved from all liability to punishment, criminal, penal or forfeiture. This may be true and it may further be true that the legislative department supposed the benefit to accrue from publicity of the crime would be sufficient. It is for the general assembly to decide upon the wisdom or policy of such legislation and not for the courts.

But assuming that section 1 of the act of 1891, as amended

---

[1] The same conclusion was reached in *Butler Street Foundry and Iron Co. v. People*, 201 Ill. 236.—Ed.

by the amendment of 1897, is unconstitutional, and therefore void; it does not follow that the whole act falls to the ground.

The proviso which, in the opinion of the court, makes section 1 unconstitutional, is declared by the legislature to be an amendment to section 1 and must be construed as applying only to section 1. "A proviso must be construed to qualify what is affirmed in the body of the act, section or paragraph which precedes it." *Boone v. Juliet,* 1 Scam. 258.

Eliminating section 1 from the act as unconstitutional and section 4, which fixes penalties for violation of section 1, there still remain sections 2, 3, 5, 6, 7, 7a, 7b and section 8.

These sections, with the caption or title of the act, make a complete law in themselves, and do not seem to be open to the objections which we have noticed in connection with section one.

Section 2 provides that it shall not be lawful for any corporation to issue or to own trust certificates, or for any corporation, agent, officer or employes, or the directors or stockholders of any corporation, to enter into any combination, contract or agreement with any person or persons, or with any stockholder or director thereof, the purpose and effect of which combination, contract or agreement shall be to place the management or control of such combination or combinations, or the manufactured products thereof, in the hands of any trustee or trustees, *with the intent to limit or fix the price or lessen the production and sale* of any article of commerce, use or consumption, *or to prevent, restrict or diminish the manufacture or output of any such article.*

Section 3 provides penalties for any violation of the act.

Section 5 makes any contract or agreement in violation of any of the provisions of the act absolutely void.

Section 6 declares that any purchaser of any article or commodity from any corporation transacting business contrary to the preceding section, shall not be liable for the price thereof.

Section 7 provides a method for the recovery of the fines imposed.

Section 7a provides for reports to be made to the secre-

tary of state, and provides penalties for the refusal of a corporation to make such report.

No constitutional objections have been urged by counsel for the defense to any of these sections, save and except the objection made against section 7*a;* that it compels a corporation, in violation of the constitution of the United States and the state of Illinois to give evidence against itself.

This objection, as we have before pointed out, is removed by the immunity clause contained in the section. If complete immunity is afforded the corporation and its officers we can see no reason why, under the power reserved by the state in section 9 of the corporation act, the legislature cannot prescribe, in the exercise of the police power, a regulation requiring corporations to make the reports called for by section 7*a* of this act. Because one section of the statute is unconstitutional it does not follow that other sections of the same act, which are within the powers given by the constitution, should not be enforced. *Nelson v. People,* 33 Ill. 390; *Donnersberger v. Prendergast,* 128 Ill. 229.

The general assembly may impose the duty upon any officer of a corporation to make report of its affairs and doings to the same extent it could impose such duty upon the corporation, and may make the corporation liable for the failure of such official to perform such duty.

For the purposes of this demurrer, it is sufficient to hold that section 7*a* (of the amendment of 1893), which imposes the duty upon certain officials to make answer to the letter of inquiry of the secretary of state, remains in force, and that the action of debt will lie to enforce the penalty prescribed for a failure to perform such duty.

We have given the question raised in this case mature consideration, as we regard it as of the gravest nature, involving, as it does, the question of the dominion of the state over corporations which it has created.

The demurrer of defendants must be overruled; rule on defendants to plead in ten days.