# STATE OF MARYLAND *vs.* POTOMAC VALLEY COAL COMPANY OF GARRETT COUNTY.

# STATE OF MARYLAND *vs.* HAMILL COAL AND COKE COMPANY

*Constitutional Law* : *police power; public welfare. Act of* 1910, *relating to Garrett county, requiring certain wages to be paid semi-monthly.*

In order to justify the State in adopting laws which forbid an individual or a class the right to acquisition or enjoyment of property in such a manner as should be permitted to the community at large, it must appear that the interests of the public generally, as distinguished from those of a particular class, require such interference, and that the means are reasonably necessary for the accomplishment of the purpose.                        p. 397

The police power of the State includes everything essential to the public safety, health and morals; and beyond this the State may interfere whenever the public interests demand it; and there is a large discretion vested in the legislature to determine not only what the people itself requires, but what means are necessary to protect such interests.        p. 397

The legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business or impose unusual or unnecessary restrictions on lawful occupations.                        p. 397

Chapter 211 of the Acts of 1910 requires all corporations or individuals engaged, or to be engaged, in mining coal or fire clay in Garrett county to pay their employees twice a month. *Held,* that the classification is arbitrary, and not made to rest upon any difference bearing a reasonable and just relation to the subject in respect to which the classification was proposed.                        p. 401

No consideration of public health, safety, morals or welfare
   justifies the act as a legitimate exercise of police power or
   of the general power in favor of public interests.          p. 399

It is not to be supposed that the Legislature would willingly
   discriminate in favor of the employees of corporations as
   against those of natural persons.          p. 402

*Decided June 24th, 1911.*

Two appeals from the Circuit Court for Garrett County
(HENDERSON, J.).

The following is the opinion of the lower Court ordered by
the Court of Appeals to be printed with the report of the
cause:

"The indictments in these three cases are precisely similar
and charge the defendants with violating Chapter 211 of the
Acts of 1910. This act is entitled 'An Act to repeal Chapter
37 of the Acts of 1904, entitled An Act to require all corpora-
tions engaged in mining coal or fire clay in Garrett county to
pay their employees wages due semi-monthly and to re-enact
the same with amendments.' The material parts of the statute
are as follows:

Section 1. *Be it enacted, etc.,* That Chapter 37 of the Acts of
1904, entitled An Act to require all corporations engaged in
mining coal or fire clay in Garrett county, to pay their
employees wages due semi-monthly, be and the same is hereby
repealed and re-enacted with amendments to read as follows:

Section 2. That all corporations or individual mine-owners
now or hereafter engaged in mining coal or fire clay in Garrett
county be and the same are hereby required to pay each and
all their employees their wages earned in said employment
semi-monthly—that is to say, all wages earned on or before the
15th day of each month shall be paid not later than the 25th
day of each month, and all wages earned from 16th day to
the last day of the month, both inclusive, shall be paid on or
before the 10th day of the succeeding month, unless said 25th
day or 10th day of the month shall fall on Sunday or a legal
holiday, in which case the time of payment shall be extended
to the next day, &c.

Section 3. Makes violation of the above provisions a misdemeanor and imposes a fine of $50 to $300. The amendment is in making the act applicable to individuals as well as corporations, and in those "now or hereafter engaged," &c.

The indictments are formally correct, but in each case a demurrer is interposed to test the constitutionality of the act. The defendants contend that the law violates the 14th amendment of the Constitution of the United States because it abridges their rights as citizens of the United States and denies to them the equal protection of the law. The State contends that the act in question is a valid exercise of the police power, or if not it is a constitutional exercise of the right to amend the charters of the defendant, which are its creatures.

It may as well be admitted at once that if the act is an exercise of police power its validity is unquestionable. But broad and undefined and even undefinable as is the police power, its scope must be confined to those matters which concern the public health, safety or morals. *Holden* v. *Hardy,* 169 U. S. 366.

Within these broad general limitations the legislature has almost absolute discretion as to the means to be adopted to accomplish its purpose. But it is for the courts to say in each case whether the power attacked is in the exercise of a reasonable discretion by the legislature, really within the bounds laid down above, or whether the reliance upon the police power be a 'mere excuse for an unjust discrimination or the oppression or spoliation of a particular class.'

In respect to the subject of the regulation of the time and manner of the payment of wages, it may well be, and the courts have so decided, that this matter may bear some relation to the public welfare, but it does not necessarily do so. The line of distinction between the adjudicated cases seems to be that where this relation or connection exists reasonable regulations are unobjectionable, but where it is absent any attempt at such interference is unjustifiable and void.

Amongst the earliest cases upon the subject of wage regulation are two decided in West Virginia in 1889. In *State* v. *Goodwill et al.,* 33 W. Va., a law providing that 'all persons, firms or corporations or associations engaged in mining coal, ore or other minerals, or mining or manufacturing them or

either of them, or manufacturing iron or steel or both, or any other kind of manufacturing, shall pay their employees as provided in this act,' and then prohibiting, under a penalty, such concerns from issuing for the payment of labor any order or other paper whatever unless redeemable at its face value in lawful money of the United States, bearing interest at the legal rate and made payable to the employee or bearer and redeemable within 30 days, was held unconstitutional because 'it is not competent for the legislature, under the Constitution, to single out owners and operators of mines and manufacturers of every kind and provide that they shall bear burdens not imposed upon other owners of property or employers of labor and prohibit them from making contracts which it is competent for other owners of property or employers of labor to make. Such legislation can not be sustained as an exercise of police power.'

This was followed by *West Virginia* v. *Fire Creek Coal and Coke Co.* (33 W. Va. 188), which held that an act (section 4 of Chapter 63 of the Acts of 1887), which prohibited persons and corporations engaged in mining and manufacturing and interested in selling merchandise and supplies from selling any merchandise and supplies to their employees at a greater per cent. of profit than they sell to others not employed by them, was unconstitutional, because it was class legislation and an unjust interference with private contracts and business.

About the same time the Indiana Supreme Court upheld the constitutionality of an act providing that the wages of miners should be paid in money, every two weeks, but no point seems to have been made against the time feature and the Court rests its judgment upon the rather absurd reason that the legislature had the right to pass such an act to protect and maintain the lawful money of the nation.

In *State* v. *Brown and Sharpe Manufacturing Company* (Rhode Island, 1892), reported in 17 L. R. A. 856, the legislature of that State had provided that 'every corporation other than religious, literary or charitable corporations, and every incorporated city, but not including towns, shall pay weekly the employees,' and a penalty was imposed for failure to do so. The Court there sustained the constitutionality of the act, upon the ground that it was an amendment of all charters to which

it applied, and cited the case of *Shaffer and Munn* v. *Union Mining Co.,* 55 Md. 74. The Court held that the law could not be obnoxious to the 14th amendment of the Constitution of the United States because that amendment has no application to corporations, and because a corporation is neither a citizen nor a person within its purview—a contention long since sent to its final resting place. *Railroad Co.* v. *Ellis,* 165 U. S. 150; *Luman* v. *Hitchens Bros. Co.,* 90 Md. p. 24. What force the judgment has must therefore rest upon the right of amendment of corporate charters.

In *State* v. *Loomis,* 115 Mo. 307 (1893), the Court held unconstitutional an act prohibiting mining or manufacturing concerns from issuing for the payment of wages any order or other evidence of indebtedness payable otherwise than in lawful money of the United States unless the same were negotiable and redeemable without discount in cash or in supplies at the option of the holder, because such a law deprived persons of liberty without due process of law. The Court held that the 'liberty' guaranteed by the Constitution includes the right to freely buy and sell, make contracts and have enforced as others may, and that the classification of mining and manufacturing enterprises for legislation regulating the mode of payment of employees was unreasonable and arbitrary and could not be upheld.

In *Frorer* v. *People,* 140 Ill. 171, a company store act was held unconstitutional.

In *Re House Bill No.* 1230 (Mass. 1895), 28 L. R. A., p. 344, a proceeding peculiar to Massachusetts by which the opinion of the Supreme Court can be obtained by the legislature, the Court advised the lawmaking body that an act requiring manufacturers to pay the wages of their employees weekly, although applying to individuals as well as corporations, was within the power of the legislature under the Constitution of that State, which extends such power 'to all manner of wholesome and reasonable orders, laws, statutes and ordinances, directions and instructions, either with penalties or without, so as the same be not repugnant or contrary to the Constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof and

of the subjects of the same and for the necessary support and
defense of the government thereof, &c.,' and does not in terms
make any provisions as to freedom or liberty of contract. 'The
legislation on this subject relates to a great variety of contracts,
and has been passed, some of it to promote the public health
or public morals or the public convenience, and some of it for
the protection of individuals from fraud, and some of it for the
protection of classes of individuals against unfair or uncon-
scionable dealing.'

In *Holden* v. *Hardy*, 169 U. S. 366 (1898), the law of Utah
limiting the hours of labor in underground mines and in smelt-
ers and ore reduction works was held constitutional. The act
was attacked under the 14th amendment of the Constitution of
the United States, because it was alleged to abridge the privi-
leges and ammunities of citizens of the United States, deprived
both employer and laborer of his property without due process
of law and denied to them the equal protection of the law. The
Court held this statute to be a police regulation, proper for those
engaged in the hazardous employments mentioned, and in the
course of its opinion says:

'While this Court has held, notably in the cases of *Davidson*
v. *New Orleans*, 96 U. S. 97 (24-616), and *Yick Wo* v. *Hopkins*,
118 U. S. 356 (30-220), that the police power can not be put
forward as an excuse for oppressive and unjust legislation, it
may be lawfully resorted for the purpose of preserving the
public health, safety or morals, or the abatement of public nui-
sances, and a large discretion is necessarily vested in the legisla-
ture to determine, not only what the interests of the public
require but what measures are necessary for the protection of
such interests.' * * *

'The question in each case is whether the legislature has
adopted the statute in exercise of a reasonable discretion or
whether its action be a mere excuse for an unjust discrimina-
tion or the oppression or spoliation of a particular class.'

The California Supreme Court in *Slocum* v. *Bean Valley
Irrigating Company*, 122 Cal. 555 (55 Pac. 403), in 1898,
decided that the Act of March 31, 1891, giving liens on the
property of corporations for the wages only of such mechanics
and laborers as may be employed by the week or month, was

repugnant to the provision of the Constitution of California prohibiting special legislation.

The Supreme Court of Illinois in *Braceville Mining Company* v. *The People,* 147 Ill. 66, construed an act which provided 'that every manufacturing, mining, quarrying, lumber, mercantile, street, electric and elevated railway, steamboat, telegraph, telephone and municipal corporation, and every incorporated express company and water company, shall pay weekly each and every employee engaged in its business the wages earned by such employee to within six days of the date of such payment, &c.' In holding this act unconstitutional the Court says, 'The act under consideration applies not only to all corporations existing within the State, or to all that have been or may be organized for pecuniary profit under the general incorporation laws of the State. There is no attempt to make a distinction between corporations and individuals who may employ labor. The slightest consideration of the act will demonstrate that many corporations that may be and are organized under the laws are not included within the designated corporations. No reason can be found that would require weekly payments to the employees of an electric railway that would not require like payment by an electric light or gas company; to a corporation engaged in quarrying or lumbering that would not be equally applicable to a corporation engaged in erecting, repairing or removing buildings or other structures; to mining that would not exist in respect of corporations engaged in making excavations and embankments.'

In Indiana the decisions are seemingly somewhat inconsistent. In *Republic Iron and Steel Co.* v. *State,* 66 N. E. 1005, decided in 1903, the act in question was one that provided as follows: 'Every person, company, corporation or association employing any person to labor or in any other service for hire, shall make weekly payments for the full amount due for such labor or service, in lawful money of the United States to within six days or less of the time of payment.' The Supreme Court held that this act was not a legitimate exercise of the police power and was unconstitutional, saying: 'When the power is used for the purpose of regulating a business, occupation or employment which in itself is lawful and useful to the com-

munity, it becomes the duty of the Court, when called on, to decide whether the particular regulation is just and reasonable and in harmony with the constitutional guarantee, or whether it is an unwarrantable invasion of the protected rights of the citizen to pursue such business or employment upon terms of his own chossing.'

In the same State in 1906 in the case of *Seeleysville Coal and Mining Company* against *McGlosson,* 77 N. E. 1044, the law in controversy was as follows: 'Every corporation, association, company, firm or person engaged in this State in mining coal, ore or other mineral, or quarrying stone, or in manufacturing iron, steel, lumber staves, heading barrels, brick, tile machinery, agricultural or mechanical implements, or any article of merchandise, shall pay each employee of such corporation, association, firm or person, if demanded, at least once every two weeks the amount due such employee for labor, and such payment shall be in lawful money of the United States, and any contract to the contrary shall be void.' The penalty was $1.00 per day and attorney's fees.

The defendant set up the *Republic Iron and Steel Co. case, supra,* as conclusive, but the Court says: 'The case at bar can not, as insisted by counsel for appellant, be ruled by the decision in *Republic Iron, etc., Co.* v. *State, supra.* The statute in controversy in this latter case and the one herein involved are materially different. The distinction between the two acts is palpable. The invalidity of the statute involved in *Republic Iron, etc., Co.* v. *State, supra,* was by this Court attributed to the fact that the act deprived both the employer and employee in all lines of labor of the right to contract for employment except upon the condition that the wages earned by the employee should be paid weekly. The right of the legislature to reasonably, or to a limited extent, regulate the payment of wages, as is done under the statute in the case at bar, was not in that appeal denied by the Court. It will be observed that the Act of 1887 does not profess to restrict or abridge the right of contract except as against its express requirements that the amount due the employee for labor shall be paid in money of the United States. This is the only express provision thereof which prohibits the right of contract. The constitutionality of this pro-

vision of the act was fully sustained by this Court in *Hancock v. Yaden,* 121 Ind. 366.' The Court goes on to say that 'the classification certainly can not be said to be narrow, unreasonable or arbitrary.'

It also holds that 'This requirement to pay at the time prescribed by the statute only becomes mandatory upon the employer on the demand of the employee to whom the wages are due and owing. His right under the law to semi-monthly demand the amount of wages then due him, is a matter wholly optional with him. It is a right which he may exercise or not, as he chooses. In no manner does the statute require him to exercise this right against his own free volition.' There is no mention in this case of the Constitution of the United States.

In *Toledo, St. L. and W. R. R. Company* v. *Long,* decided in 1907, same Indiana Court, 82 N. E. 757, the judgment is that a law providing (1) that every company, corporation or association now existing or hereafter organized and doing business in this State shall, in the absence of a written contract to the contrary, be required to make full settlement with, and full payment in money to its employees engaged in manual or mechanical labor, for such work and labor done and performed by said employees for such company, corporation or association, at least once in every calendar month in the year; and (2) that for a violation of this provision a penalty of one dollar a day be recovered, is unconstitutional under the 14th amendment of the Constitution of the United States because it discriminates in favor of employees of corporations, and only those doing manual or mechanical labor.

*Johnson* v. *Goodyear Mining Co.,* 127 Cal. 4 (1899), 47 L. R. A. 338, involved a law giving a lien for wages on all the property of a corporation, except duly recorded mortgages, etc., in case of the failure of a corporation to pay its employees monthly, without even requiring any description of the property or notice in any manner in order to make the lien valid, and an attorney's fee, while such provisions did not apply to any other class of laborers. This was held to be unconstitutional discrimination against corporations.

The United States Court for the Northern District of California, construing a California statute, in *Skinner* v. *Garnett*

*Gold Mining Co.* (1899), 96 Fed. Reporter, 735, holds that an act requiring all corporations doing business in the State to pay their employees at least once a month the wages earned during the preceding month, and providing that the violation of the law should entitle an employee to a lien for his wages, having precedence, does not discriminate unjustly against corporations, in violation of the State Constitution prohibiting the granting of special privileges or immunities to any citizens or class of citizens, nor does it violate the 14th amendment of the Constitution of the United States, nor does it interfere illegally with the freedom to make contracts.

The opinion contains the usual guarded expressions as to the illegality of unjust discriminations or unreasonable classifications, one of which is as follows: 'The doctrine of the aforegoing cases leads to the conclusion that a classification of corporations, imposing burdens different from those imposed upon the general public, may be made without the statute encountering the prohibition of the State or Federal Constitution, providing such classification is made upon reasonable grounds, and is not merely an arbitrary selection.'

The Supreme Court of the United States in *St. Louis and Iron Mt. Ry. Co. v. Chas. Paul,* in 173 U. S. 404 (1899), upheld an act of Arkansas requiring railroad companies to pay their employees when discharged their unpaid wages then earned without deduction, or that such wages should continue at the same rate until paid, not to exceed 60 days. The Court ruled that such an act did not deny to such companies the equal protection of the law, but the reasoning of the Court was that this was so because railroad companies were organized for public purposes, and it was their duty to serve the public in the most efficient manner practicable. It further placed its ruling upon the ground that the legislature could amend railroad charters to accomplish the result desired. Following is a part of the opinion: 'If the legislature, in its wisdom, seeing that their employees are and will be persons dependent on their labor for a livelihood and unable to work on credit, should find that better servants and service could be secured by the prompt payment of their wages on the termination of their employment and that the purpose of their creation would thereby be more

nearly accomplished, it might require them to pay for the labor of their employees when the same is fully performed and at the end of their employment.'

As to the 14th amendment of the U. S. Constitution, the Court said: 'In view of the fact that these corporations were clothed with a public trust, and discharged duties of public consequence, affecting the community at large, the Supreme Court held the regulation, as promoting the public interest in the protection of the employee to the limited extent stated, to be properly within the power to amend reserved under the State Constitution. Inasmuch as the right to contract is not absolute, but may be subjected to the restrain demanded by the safety and welfare of the State, we do not think that conclusion in its application to the power to amend can be disputed on the ground of infraction of the 14th amendment.'

In a note to *Lawrence* v. *Rutland Ry. Co.* (1907), 80 Vt. 370, reported in 15 L. R. A. N. S. 350, later cases in Ohio and Pennsylvania denying the constitutionality of such legislation, are given, but the reports are not at hand.

Coming now to our own State, the law applicable to this branch of the case is laid down in *Luman* v. *Hitchens Bros. Co.,* 90 Md. 14, as follows: 'A statute which denies to one person the protection that is accorded to others under the same conditions, and in the like situation, or which imposes on one a burden not similarly borne by others, is, because it so discriminates, in both instances, invalid under the paramount organic law. Though it was perfectly competent to the legislature to prevent railroad and mining corporations from engaging in the business of bartering or selling goods, wares and merchandise, either by not conferring such a power upon them in their charters, or, if it had been conferred, then, by subsequently amending the charters and imposing the restriction by such an amendment; yet, it was obviously not within the power of the General Assembly to deny to particular individuals, who happened to be officers of those corporations, and merely because they were such officers, the right which every other citizen of the county, whether an officer of other corporations or not, possessed to sell goods, wares and merchandise within the county. Whilst the legislature may, under conditions, create classes and subject all persons

coming within the classifications to burdens or duties not imposed upon individuals outside of the classes, these 'classifications must not be arbitrary or unreasonable, but must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed.' * * * 'There is nothing in operating mines or railroads to render the individual less capable to contract, or to give him greater wisdom and adroitness therein, than he would possess were he engaged in operating and controlling a manufacturing establishment or conducting commercial pursuits or any other of the numerous branches of industry. In each and all of these callings vast numbers of both skilled and unskilled laborers are employed and their relation to their employers would seem to be under precisely the same conditions as are those affecting the relations between mine owners and officers of railroads on the one side, and their employees on the other. The prohibition which the statute contains is not imposed for the purpose of rendering mining and railroading less perilous or laborious, nor to restrict or regulate the duties of employer and employee in respects peculiar to those industries, but for the sole purpose of imposing disabilities in contracting as to the sale of goods, wares and merchandise—things about which all laborers must contract, and as to which officers and agents of all other corporations, and in every other branch of industry are permitted to contract with their employees without any restriction whatever.' * * * 'The statute was not passed in the exercise of the police power of the State, and is repugnant to the 14th amendment.'

The language of this opinion would seem to be *mutatis mutandis,* precisely applicable to the case at bar. The classification of corporations and individuals engaged in mining coal or fire clay in Garrett county, for the purpose of imposing upon this class burdens not imposed upon other industries, seems to be unreasonable and arbitrary and founded upon no essential or apparent difference in conditions between this class and others engaged in mechanical or similar occupations. The act does not explain or even suggest any reason why mining concerns should pay their employees twice a month, when railroad, lumbering or manufacturing concerns are not required so to do. Nor is

there any reason for such classification and differentiation that occurs to the mind of the Court. With every disposition to uphold solemn acts of the legislature, the Court must be mindful of the duty to protect citizens from the imposition of unequal and arbitrary and unreasonable burdens, and after a full consideration of this act, I have reached the conclusion that it is not a proper exercise of police power and that it violates the 14th amendment of the Constitution of the United States and must be struck down, unless it can be upheld, as far as corporations are concerned, as an act amending the charters of all mining corporations.

The extent of the power to so amend corporate charters seems to be held to be unlimited by our Court of Appeals in *Shaffer and Munn* v. *The Union Mining Co.*, 55 Md. 74, and in the *Hitchens case* last quoted. It was not necessary in either of these cases to go so far, and the *Shaffer and Munn case* is severely criticised in *Johnson* v. *Goodyear Mining Co.*, 127 Cal. 4 (47 L. R. A. 338). In the *Shaffer and Munn case* the Court declares that a corporation has no interest or natural rights like a citizen. Certainly this is so in the sense that the legislature may in the creation of corporations limit their powers and rights to any extent it may see fit, and that it may under the reserved power of alteration and amendment prescribe for the government of their affairs whatever rule it could have established in the original charters.

In *Lawrence* v. *Rutland Ry. Co.*, 80 Vt. 370, 15 L. R. A. N. S. p. 350, it is expressly decided that the reserved power to amend charter of a railroad company includes the right to require it to pay its employees weekly in lawful money, and that its constitutional rights are not impaired thereby.

Inasmuch as our Constitution has provided that corporations shall be created under general laws so far as possible, and that no special charter shall be valid where general laws exist for the formation of such corporations, as it may be desired to form, it would seem reasonable and logical that amendments must also be general laws. It is somewhat difficult to distinguish between the legislative act in the *Shaffer and Munn case* as a general act of amendment of charters and that in the *Hitchens case,* and yet the Court of Appeals holds one to be an amendment

and the other not.  As in the *Hitchens case,* the act now at bar
does not profess to amend any charters, and as its intention in
this respect is one of construction, it would seem to me that it
must be construed to be an attempt to pass a police regulation,
whereas, we have seen, it is incompletely done.   The fact that
individuals are joined with corporations, and that corporations
external to the State are covered by its terms, indicates that it
was not passed as an amendatory act.  If it is objected that the
act might be allowed to stand as to corporations, while void as
to individuals under the 14th amendment, the answer is that
when a part of a statute is held to be void then the entire statute
must be held to be inoperative, if its enforcement without the
void part would effect results not within the legislative purpose.
*Storck* v. *State,* 101 Md. p. 486.   It must, I think, be apparent
that the legislature never intended by this act that corporations
and individuals engaged in the same business, should stand upon
a different footing as to the payment of their employees, and
that such a construction would effect results exactly contrary
to the legislative intent.   The whole statute must therefore fall.
The demurrer in each case will be sustained."

ROBERT R. HENDERSON.

The causes, by agreement of counsel, were submitted on
briefs to BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS,
PATTISON, URNER and STOCKBRIDGE, JJ.

*Isaac Lobe Straus, Attorney-General, Julius C. Renninger*
and *David J. Lewis,* filed a brief for the appellant.

*Edward H. Sincell* and *Gilmore S. Hamill* filed a brief
for the appellees.

PEARCE, J., delivered the opinion of the Court.

The Potomac Valley Coal Company, and the Hamill Coal
and Coke Company, each being a body corporate, were
separately indicted in the Circuit Court for Garrett County,
charged with the violation of Chapter 211 of the Acts of

1910, a local law for Garrett County. The charge in each case was precisely the same, viz, the failure to pay to a certain named employee of each company, semi-monthly, the wages respectively earned by such employee, as required by said act; and the indictments were precisely similar, the only difference between the two cases being that the Potomac Valley Coal Company was created under the general incorporation law of Maryland, while the Hamill Coal and Coke Company was created under the general incorporation law of Virginia, but this difference in no way affects the disposition of the question involved in each case.

In each case it was conceded that the indictments are technically correct and demurrers were interposed for the sole purpose of determining the constitutionality of the act under which the indictments were drawn. The cases were argued together below, and the Circuit Court held the act to be unconstitutional and void, and sustained the demurrer in each case, and judgment being entered for the defendants upon the demurrers, the State has brought these appeals, which were submited upon single briefs filed in both cases.

The title of the act in question is as follows: "An act to repeal Chapter 37 of the Acts of 1904, entitled an act to require all corporations engaged in mining coal or fire clay in Garrett County to pay their employees wages due semi-monthly and to re-enact the same with amendments," and we will transcribe the act below:

"Section 1. *Be it enacted by the General Assembly of Maryland,* That Chapter 37 of the Acts of 1904, entitled An Act to require all Corporations engaged in Mining Coal or Fire Clay in Garrett county to pay their employees wages, due semi-monthly, be and the same is hereby repealed and re-enacted with amendments to read as follows:

Section 2. That all corporations, *or individual mine owners, now* or hereafter engaged in mining coal or fire clay in Garrett county, be and the same are hereby required to pay each and all their employees their wages earned in said employment semi-monthly; that is to say, all wages earned on or

before the 15th day of each month shall be paid not later than the 25th day of each month, and all wages earned from sixteenth to the last day of the month, both inclusive, shall be paid on or before the tenth day of the succeeding month, unless said twenty-fifth day, or tenth day, shall fall on Sunday or a legal holiday, in which case the time of payment shall be extended to the next day; *and if payment as above is to be made before the twenty-fifth or the tenth day of any month, it shall be the duty of the mine owner, agent, superintendent, or paymaster of each mine, to notify their employees at least three days in advance of such intended payment, by posting notices at their respective places of employment.*

Section 3.   That any corporation, *association or individual,* operating a coal or fire clay mine in Garrett county, that shall fail or neglect to make payment of wages at the times and in the manner hereinbefore specified in section 2 of this act, shall be deemed guilty of a misdemeanor, and upon indictment and conviction thereof shall be fined not less than fifty dollars nor more than three hundred dollars in the discretion of the Court."

The only amendments made by Chapter 211 of 1910 to the language of Chapter 37 of 1904, are indicated by the words in the above transcript which are italicised, so that the only apparent, or rationally inferable, purpose of amending the act was to embrace in its provisions, *individuals* as well as *corporations,* and those *then* as well as *thereafter* engaged in the pursuits mentioned.

Two grounds of demurrer are assigned:

(1) That the act interferes with the right of personal liberty guaranteed both by the 23rd Article of the bill of rights of Maryland, and by the 14th amendment to the Constitution of the United States, in that it abridges the freedom of contract which is an essential element of personal liberty, unless some restriction is made in the legitimate exercise of the police power.

(2) That it discriminates unreasonably against particular classes of employers, and thus denies to those classes the

equal protection of the laws guaranteed by the 14th amendment to the Constitution of the United States.

These questions have been many times, in many forms, before the highest State Courts and the Supreme Court of the United States, and it is not surprising in the multitude of such cases, in view of the nice distinction of facts sometimes existing, the ingenuity and skill of able counsel, and the diverse mental habits and training of the judges who are required to decide these questions, that the decisions are not always clearly consistent, or readily reconcileable, but through them all there will be found certain basic principles establshed, which, kept steadily in view afford a reasonable safe guide for their just application to any state of facts which may be presented, and we will now proceed to state some of the principles thus established.

JUDGE COOLEY in his work on *Constitutional Limitations* (5th Ed.), page 391, says: "Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent singles his case out as one to be regulated by a different law ·from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free government. * * * The doubt might also arise whether a regulation made for any one class of citizens, entirely arbitrary in its character, and restricting their rights, privileges, or legal capacities in a manner before unknown to the law, could be sustained, notwithstanding its generality. Distinctions in these respects must rest upon some reason upon which they can be defended, like the want of capacity in infants and insane persons; and if the legislature should undertake to provide that persons following some specified lawful trade or employment should not have capacity to make contracts, or to receive conveyances, or to build such houses as others were allowed to build, or in any other way to make such use of their property as was permissible to others, it can scarcely be doubted that the act

would transcend the due bounds of legislative power, even though no express constitutional provision could be pointed out with which it would come in conflict. To forbid to an individual or a class the right to the acquisition or enjoyment of property in such manner as should be permitted to the community at large, would be to deprive them of *liberty,* in matters of primary importance to 'their pursuit of happiness;' *and those who should claim a right to do so ought to be able to show a specific authority therefor, instead of calling upon others to show how and where the authority is negatived,"* idem 393. In exception to these general principles, "the police power is universally conceded to include everything essential to the public safety, health and morals, * * * Beyond this, however, the State may interfere wherever the *public interests* demand it, and in this particular a large discretion is vested in the Legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. *Barbier* v. *Connolly,* 113 U. S. 27; *Kidd* v. *Pearson,* 128 U. S. 1. *But to justify the State in thus interposing its authority, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference;* and, second, that the means are reasonably necessary for the accomplishment of the purpose. The Legislature may not under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual or unnecessary restrictions upon lawful occupations." *Lawton* v. *Steele,* 152 U. S. 388.

Instances where the police power may be validly exercised, are the destruction of a dilapidated house on a highway endangering passers-by, or blowing up houses in a town to stay a conflagration, the slaughter of diseased cattle, the destruction of impure milk being served to the general public of a community, the compulsory vaccination of school children, the suppression of houses of ill fame, or of obscene publications, and even the regulation of railways and other recognized public utilities. All these have direct and obvious rela-

tion to the public safety, health, morals or general welfare, and this relation is immediately suggested to the most ordinary intelligence and perception. The learned Judge of the Circuit Court in his opinion forcibly observes, "the act does not explain or even suggest any reason why mining concerns should pay their employees twice a month, when railroad, lumbering or manufacturing concerns are not required to do so. Nor is there any reason for such classification and differentiation that occurs to the mind of the Court."

The Attorney-General in his ingenious and very able brief lays much stress upòn what he characterizes as the "socioeconomic isolation of mining communities," and argues that mining corporations discharge peculiar duties, of public consequence and concern, and affecting the *general public* as distinguished from those of certain communities or localities, but we can not accept this as a satisfactory distinction. That contention was made in *Millett* v. *People,* 117 Ill. 294, in reliance upon *Munn* v. *Illinois,* 94 U. S. 113, but was not approved, the Court saying: "The public are not compelled to resort to mine owners any more than they are compelled to resort to the owners of wood or turf, or even to the owners of grain, domestic animals or to those owning any of the other ordinary necessities or conveniences of life, which form a part of the commerce of the country. The owner of a coal mine is under no obligation to obtain a license from any public authority and therefore when he chooses to mine his coal he exercises no franchise." In the same case the Court said: "Why should the owner of the mine, or the agent in control of the mine, not be allowed to contract in respect to matters as to which all other property owners and agents may contract? Undoubtedly, if these sections (regulating the weighing of coal in so far as it nullifies all contracts for mining coal which dispense with such weighing) fall within the police power, they may be maintained on that ground; but it is quite obvious they do not;" and the Court also cited with approval the following passage from *Walley's Heirs* v. *Kennedy,* 2 Yerger, 554: "Every partial or private law

which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional or void. *Were it otherwise, odious individuals or corporate bodies would be governed by one law, the mass of the community, and those who made the law, by another; whereas a like general law affecting the whole community generally could not have been passed."* We have been refered to no consideration of the public health, safety, morals or general welfare which can justify this act as the legitimate exercise of the police power of the State, and none of the cases relied on for that purpose, in our judgment, are at all analogous to the case before us. The complete, and to our minds conclusive answer, to the argument that this case is within the police power, is admirably expressed in the language of the Court in *In re Jacobs,* 98 N. Y. 114. "Such legislation may invade one class of rights today and another tomorrow; and if it can be sanctioned under the Constitution, while far removed in time, we will not be far away in practical statesmanship from those ages when governmental prefects supervised the building of houses, the rearing of cattle, the sowing of seed, and the reaping of grain, and governmental ordinances regulated the movements and labor of artisans, the rate of wages, the price of food, the diet and clothing of the people, and a large range of other affairs long since, in all civilized lands. regarded as outside of governmental functions. Such governmental interferences disturb the normal adjustments of the social fabric and usually derange the delicate and complicated machinery of industry, and cause a score of ills while attempting the removal of one."

In *Frorer* v. *People,* 141 Ill. 171, the Court said: "The privilege of contracting is both a *liberty* and a *property right.* and if A. is denied the right to contract and acquire property in a manner which he has hitherto enjoyed under the law, and which B., C. and D. are still allowed by the law to enjoy, it is clear that he is deprived of both liberty and prop-

erty to the extent that he is thus denied the right to contract."

In *In re Jacobs, supra,* the New York Court of Appeals thus expressed the same principle, "One may be deprived of his liberty, and his constitutional right thereto violated, without the actual restraint of his person. Liberty, in its broad sense, as understood in this country, means the right not only of freedom from servitude, imprisonment; or restraint, but the right of one to use his faculties, in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation."

In *State* v. *Goodwill,* 33 W. Va. 188, the act under consideration which restricted the right of contract in respect to the method and time of payment for their labor was made applicable to all persons or corporations engaged in mining, or manufacturing from coal or other minerals, or any other kind of manufacturing, and the Court said: "While these terms include all persons engaged in any kind of *manufacturing,* such as the shoemaker, cigar maker, distiller, brick maker, jeweller, weaver, milliner, tailor or miller, it does not include the wholesale merchants with their hundreds of clerks and agents, nor the railroad, and construction companies, with their thousands of employees. The propriety or necessity, if such exists, of applying the provisions of the statute to these latter, is equally as great if not more so, as it is to any of the former. The rights and privileges of certain specified employers are abridged while others of the same class are left free." * * * "When the subject of contract is lawful, *not public in its character, and the exercise of it is purely private and personal to the parties,* it can not be for holden or limited by the Legislature." The statute in that case was an almost literal copy of a Pennsylvania statute, declared in *Godcharles* v. *Wigeman,* 113 Pa. St. 431, to be unconstitutional "because it prevented persons *sui juris* from making their own contracts."

The logical and convincing test of this question is whether the subject of contract, is public or private in its character,

as expressed in the *West Virginia case, supra,* which is in that respect typical of all the more important cases holding acts to be void which interfere with the liberty of contract. *St. Louis and Iron Mountain R. R.* v. *Paul,* 173 U. S. 404, is a typical case of the converse of the proposition, where the subject of contract is of a public character. The act in that case provided that railroad companies should pay the wages of their employees, without deduction, whenever they were discharged, and if not so paid, that then, as a penalty, such wages should continue at the same rate until paid, during a period not exceeding 60 days. That act was upheld as not an infraction of the Fourteenth Amendment, upon the distinct ground however, that the *railroad corporations* were clothed with a public trust, and discharged duties of public consequence affecting the community at large."

No case has been cited from the Supreme Court of the United States which measures up to the contention of the Attorney-General, and which, in such event, it would be our duty to obey.

We have, however, in Maryland, the case of *Luman* v. *Hitchens,* 90 Md. 14, in which an act of our Legislature prohibiting railroad and mining corporations, their officers or agents, from selling or bartering goods, wares and merchandise in Allegany County to their employees, was held not to have been passed in the exercise of the Police Power of the State, and to be repugnant to the Fourteenth Amendment because "the attempted classification was arbitrary, and was not made to rest upon some difference which bears a reasonable and just relation to the act—the thing—in respect of which the classification is proposed."

We fully concur with the Circuit Court that that decision is precisely applicable to the case at bar, and that in the absence of paramount authority from the Supreme Court of the United States it is our duty to follow the ruling in *Luman* v. *Hitchens.*

Without discussing the question whether, as to corporations, this act could be sustained as amending the charters of

either domestic or foreign corporations doing business in this State, while striken down as to individuals, we do not think it conceivable that the Legislature would have passed the act at all, if they had anticipated the discrimination which would thus be worked in favor of the employees of corporations as against those of natural persons. *Nutwell* v. *Anne Arundel County,* 110 Md. 669.

The opinion of the learned Judge of the Circuit Court contains so thorough and impartial a review of the leading cases relied on by counsel upon both sides that we shall direct it to be published in connection with this opinion.

*Judgment affirmed in both cases.*