Containing Cases of the October Term, 1926, and January Term, 1927.

## ANNA K. SPANN *v.* CHARLES D. GAITHER, Commissioner of Police.

*Municipal Ordinance—Validity—Restriction of Laundry Business.*

While an ordinance, passed under a general grant of power to the municipality, is presumed to be valid, if it clearly appear on its face or from proper evidence to be so unreasonable that the particular exercise of power cannot be assumed to have been intended by the Legislature, it is the court's duty to declare the ordinance void, as a matter of law. p. 5

The test of the reasonableness of an ordinance is that it should tend in some degree to effect the accomplishment of the objects for which the municipal corporation was created and its power conferred; and it should not be in contravention of common right, which as a general rule protects any one in the pursuit of any lawful calling in his own way, provided this does not involve an encroachment on others' rights. p. 6

An ordinance of Baltimore City making it a penal offense for any person, firm, or corporation to operate a laundry, to collect articles to be laundered, or to deliver them when laundered, between midnight Saturday and six o'clock A. M. Monday, was invalid so far as concerned the first six hours of Monday, as being unreasonable and not within the legislative powers of the municipality. pp. 6-11

The reasonableness of an ordinance is to be adjudged by its purport and its effect, and its constitutionality is to be tested not only by what has been done, but aslo by what may be done, under its authority. p. 11

If an ordinance, prohibiting the conduct of a certain business on Sunday and the first six hours of Monday, is invalid as re-

gards such Monday hours, equity will enjoin its enforcement during that period, at the suit of one who would be injuriously affected by such enforcement.　　　　　p. 12

*Decided January 11th, 1927.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Bill by Anna K. Spann, trading as the East End Laundry, against Charles D. Gaither, Commissioner of Police for Baltimore City. From a decree dismissing the bill, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Horton S. Smith,* for the appellant.

*Willis R. Jones, Assistant Attorney General,* and *Hiram C. Griffin,* with whom was *Thomas H. Robinson, Attorney General,* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Anna K. Spann, trading as the East End Laundry, the appellant, is the proprietor of a business which gathers, from its patrons throughout Baltimore City, soiled clothing, linens and all other articles requiring washing; and carries them in automobile trucks to its place of business, where they are washed and then returned in the trucks to their respective owners, who do the ironing. The appellant's patronage is largely among those who require their articles for wash to be collected after Saturday night and washed and returned on Monday in time to be ironed on that day, so that thirty-five *per centum* of the volume of business is done by ten o'clock on Monday morning of every week; and forty *per centum* of the work is done between midnight of Monday and

ten o'clock on Tuesday morning. As the Sunday laws prohibit the work of collecting and washing to be carried on within the hours of Sunday, the appellant does not begin to collect or wash the laundry until after the midnight of Sunday, but she does begin immediately thereafter to collect, and the washing starts upon the arrival of the first truck load, and the successive steps of collecting, washing and returning are carried on with such system and rapidity that by noon of that same Monday the thirty-five *per centum* of the weekly wash is again in the possession of its several owners. By the satisfactory performance at its laundry of this common drudgery of domestic life, the appellant had built up a large and prosperous business, when the appellee, Charles D. Gaither, Commissioner of Police for Baltimore City, who has control and command of the members of the police force of Baltimore City, directed those in uniform, and sent others in plain clothes and in automobiles with instructions, to arrest the drivers of any laundry wagons or trucks on the streets of Baltimore on January 4th, 1926, between the end of Sunday at the hour of midnight and six o'clock of Monday morning.

In obedience to these instructions, policemen arrested five drivers of the appellant, who were operating in Baltimore City, during the specified period, the laundry wagons or trucks of the appellant, and carried them to the station house, where they were held for the action of the grand jury. The appellee was informed that the defense of the traversers would be that the ordinance under which they had been arrested was void, and that the trial of the charges against the drivers would provide a speedy test of the validity of the ordinance. The appellee declined to await a test of the legality of the ordinance, and announced that, unless prevented by injunction, the appellee would cause, on every succeeding Monday morning, the arrest of any driver or person found working in a laundry or collecting or delivering laundry or articles to be washed during the period named; and, in like manner, of the appellant on every successive Monday that she operated the laundry, or permitted the col-

lection or distribution of the wash, during the forbidden hours.

The effect of the arrests made and intended would have compelled the appellant to cease all operations connected with her business during the interdicted period, unless she and her employees would have been willing to submit to the inconvenience, disgrace and expense of repeated arrests. The position of the appellant was that, if the ordinance were valid, she was willing to abide by its mandate, although it would require the outlay of a large sum of money to install the additional machinery and equipment which would be necessary to meet the requirements of her trade, if the work of the laundry were not to begin until after six o'clock Monday morning; but, inasmuch as the appellant was advised that the ordinance was invalid, and the expenditure, therefore, unnecessary, she appealed to equity to protect her property rights, asking the ordinance to be declared of no legal effect, and, pending this adjudication, its enforcement by arrests to be suspended. The arrests were on January 4th, 1926, and the bill was promptly filed two days later; and a preliminary injunction granted. The respondent having answered, both parties offered proof before the chancellor, who, after hearing, dismissed the bill of complaint, and the complainant appealed.

The ordinance in question is a new section of article 25 of the Baltimore City Code, and became effective on January 1st, 1926. The portion of the ordinance requiring consideration will be next set forth in full: "58A. It shall be unlawful for any person, firm or corporation doing a public laundry business to operate a laundry or to collect wearing apparel or articles of any kind whatsoever for the purpose of washing or laundering or to deliver the same after having been washed or laundered, between the hours of twelve o'clock midnight Saturday and six o'clock A. M. Monday. Any person, firm or corporation violating the provisions of this section shall, upon conviction thereof, be fined not less than fifty dollars nor more than five hundred dollars for each offense."

The ordinance denounces as unlawful the operation of a laundry, the collection of the articles to be washed, and the delivery of articles which have been washed or laundered, if done between midnight of Saturday and six o'clock in the morning of the following Monday. It is conceded that the things forbidden were likewise forbidden by the subsisting law relating to the observance of Sunday. See *Rossberg v. State,* 111 Md. 394, 414; *Norwood v. Wiseman,* 141 Md. 696, 700. The appellant and her servants did nothing in connection with the laundry business on Sunday, and the violations of the ordinance now in question were confined to the first six hours of Monday. The inquiry, therefore, is: Was the ordinance valid in prohibiting the doing of the things named during the lapse of the six hours embraced between the midnight hour of Sunday and six o'clock of Monday morning? *Van Sant v. Harlem Stage Co.,* 59 Md. 330, 337, 338; *Long v. State,* 74 Md. 565, 572, 573; *Bostock v. Sams,* 95 Md. 400, 418.

The ordinance was passed under a general grant of power to Baltimore City (a), and the legal presumption is in favor of its validity (b), but if the ordinance clearly appear on its face or from proper evidence to be so unreasonable that it cannot be assumed that the particular exercise of power was intended by the Legislature to have been included in the delegation of power to the municipality (c), it is the duty of the Court to declare it void as a matter of law (d).

*Baltimore v. Radecke,* 49 Md. 217, 229; *State v. Mott,* 61 Md. 297, 304-309; *State v. Caspare,* 115 Md. 7, 26; *State v. Potomac Coal Co.,* 116 Md. 380; *State v. Gurry,* 121 Md. 534, 541; *State v. Hyman,* 98 Md. 618; *Byrne v. Realty Co.,* 129 Md. 202, 210, 211.

(c) *Baltimore v. Radecke,* 49 Md. 217, 227, 229; *State v. Mott,* 61 Md. 297, 307-308; *Baltimore v. Hampton Court Co.,* 138 Md. 271, 276, 277.

(b) *Shaffer and Munn v. Union Mining Co.,* 55 Md. 74, 80; *Etchison v. Frederick City,* 123 Md. 283, 288.

(a) City Charter of 1915, section 6, sub-sections 9, 18, 31;

*Baltimore v. Radecke,* 49 Md. 217, 228; *Rossberg v. State,* 111 Md. 394; *Schultz v. State,* 112 Md. 217; *Tighe v. Obborne,* 149 Md. 349, 360, 361.

With these general principles in mind, the measure may now be more particularly examined and subjected to their application.

The object of the ordinance is not disclosed by the enactment, and the Court is left without any legislative indication as to the particular evil at which the law is addressed. The ordinance must be in harmony with the municipal charter, and be reasonable in its provisions. The test of reasonableness is that the ordinance should tend in some degree to effect the accomplishment of the objects for which the municipal corporation was created and its power conferred; and should not be in contravention of common right, which as a general rule protects any one in the pursuit of any lawful calling in his own way, provided that, in so doing, he shall not encroach upon the rights of others. *Cooley on Const. Lim.* (6th Ed.), 744, 745; *Byrne v. Md. Realty Co.,* 129 Md. 202, 210, 214; *Dillon on Municipal Corps.* (5th Ed.), secs. 589-599, 660.

A laundry is not an obnoxious or unwholesome business, nor is it a nuisance *per se,* and its regulation can bear no relation to the public welfare, unless the public safety, order or morals are affected by the nature of its structure, its location or its operation. The theory upon which the appellee relies to support the enactment in the instant case as a legitimate exercise of the police power is that the ordinance regulates the laundries of Baltimore City so as (a) to prevent fires; (b) to limit the hours of labor; and (c) to abate the noise occasioned by the employees, the motor trucks and the operation of the plants during the first six hours of every Monday.

The effect of the regulation imposed by the particular ordinance will be the prohibition of any operation by every laundry during the first six hours of every Monday. Aside from these forbidden six hours of Monday morning, work throughout all the other eighteen hours of Monday and dur-

ing the full twenty-four hours of every other work day of the week is not inhibited by this ordinance. Putting it another way, in all the twenty-four hours of every day during the week in which labor is lawful, a laundry may operate without restraint, except only within six hours ensuing the midnight of Sunday. The alleged necessity to lessen the fire risk, to limit the hours of labor, and to quiet the noise incident to the laundryman's labors, is as urgent and subsisting during the remaining one hundred and thirty-eight hours of the week as during the first six hours of the first work day of that week. The omission in the ordinance of these one hundred and thirty-eight hours is, therefore, in itself an acknowledgment that laundries do not need its regulatory provisions during the first six hours of Monday, because the laundrying may be carried on during these one hundred and thirty-eight hours in precisely the same manner as during the first six hours of Monday. The only existing difference is that no collections are now made on any night, except the first six hours of Monday; but there is nothing in the ordinance to prevent such collections being so made in the future, and, in determining the reasonableness of this ordinance, what may be permitted in the industry is as pertinent as what is actually being done. *Infra. Baltimore v. Radecke,* 49 Md. 217, 227.

The method of operation of an industry does not vary from day to day, nor do evils incident to the industry prevail according to the particular day of the week, and if, as here, the conditions requiring relief may, under the operation of the ordinance, rightfully obtain on any day of the week, except a certain portion of Monday, the fact that the incidence of the ordinance is confined to but a portion of one day of the week is persuasive that the regulation is not justified by public welfare, but is a purely arbitrary and unwarranted interference with the management of a lawful business. No sufficient reason has been suggested or has occurred to the Court, as a rational basis for the ordinance's discrimination between the first six hours of Monday and those of the remaining five days of the week. It would be an anomalous law that would

declare the operation of an industry during certain hours to be an evil which it was necessary to abate, and then implicitly sanction it by forbidding such operation during only one of the six days of the week. On its face the ordinance has no substantial relation to the protection of the public health, the public morals or the public safety. *Baltimore v. Radecke,* 49 Md. 217, 227; *Mugler v. Kansas City,* 123 U. S. 623, 31 L. Ed. 210; *C. & P. Tel. Co. v. Board of Forestry,* 125 Md. 666, 676; *Luman v. Hitchins Bros.,* 90 Md. 14, 27, 28; *Clark v. Harford Agricultural Assn.,* 118 Md. 620; *State v. Potomac Coal Co.,* 116 Md. 380, 397, 398; *Goldman v. Crowther,* 147 Md. 282, 293, 302.

If we consider the ordinance and the testimony in connection with the three-fold forms of public welfare that the ordinance is asserted by the appellee to subserve, it even more clearly appears that the ordinance bears no substantial relation to the motives imputed by the appellee to the lawmaker. The laundry takes the place of the washwoman, and it is an enterprise which is indispensable for the comfort and health of the community, and is the inevitable accompaniment of domestic life in every center of population. It is furthermore an occupation which must largely conform to the habits and social customs of its patrons; and obviously no unreasonable regulation should be imposed upon the successful operation of such a prime necessity of cleanly life. The ordinance doe not attempt to regulate the location, construction or use of laundries, but simply prevents their operation during the period from midnight of Saturday to six o'clock in the morning of the following Monday. As before explained, the time included between the midnight of Sunday and six o'clock on Monday morning is the portion of the period with which we are concerned.

The first reason urged by the appellee in support of the ordinance is that it will tend to lessen the danger of fire. It will be noted that this alleged peril of fire arises only from running the laundry during the first six hours of Monday. There is no special danger of fire from a laundry as now by ordinance suffered to be built, equipped, opened, and con-

ducted and, as we read the testimony, there is no appreciable difference in fire hazard between the operation of a laundry during the prescribed period and during any other period of the week. The risk of fire is certainly no greater than between six o'clock in the evening and midnight of Monday or than during the twelve hours of night of every succeeding five days of the week. Nor was it established that fires in laundries either occurred more frequently or were more likely to arise, during the hours specified by the ordinance. If such were the case, the terms of the ordinance are a complete refutation that its design was addressed to the prevention of fires, as the legislators could not have contemplated depriving the public of the benefit of a protective measure against fire for sixty-six of the seventy-two hours of nightly peril in every six days of labor.

The ordinance is justified on the second ground of lessening the hours of labor. The general statutory law regulates the hours of labor in a laundry of minors and women. Code, art. 100, secs. 4, 25, 54. A woman is not permitted to work more than ten hours in any one day, nor more than sixty hours in any one week, nor more than eight hours in any one day, if any part of her work is done before six o'clock in the morning or after ten o'clock in the evening of the said day, nor shall a woman be permitted to work for more than six hours continuously at any one time, if three or more persons are employed in the laundry, without an interval of at least a half hour, except that such female may be so employed for not more than six and a half hours continuously at one time, if she shall not be permitted to work during the remainder of the day in her employment.

The statute does not prescribe any limit to the hours of labor of an adult male in a laundry, and the evidence fails to establish that the hours of toil for men at a laundry are excessive, or that the periods of work are injurious to health or endanger the safety of the workmen. The ordinance, moreover, does not profess an attempt to regulate the hours of work of a laborer or employee of a laundry. It does not afford any basis to measure what should be the length of a

day of work. A man could begin to work at six o'clock on Monday morning and work continuously for ten, fifteen, twenty or any number of consecutive hours without violating the ordinance. The mere fact that, save only on Monday, any workman could toil during a similar period of time to that prohibited without his employer breaching the ordinance in any sense is sufficient to show that this ordinance has no genuine connection either with a definition of what hours of labor shall constitute a day's work or with an effort to protect the safety of the public or the health of the individual employee from any dangers threatened by excessive and exhaustive labor in a noxious or unwholesome occupation.

It is appropriate in this connection to say that we cannot agree with the argument that the ordinance was passed for the better keeping of Sunday. It would seem sufficient to say that legislation on the subject of Sunday observance is general in its application, except as to those who are excepted because of being engaged in specified works of necessity, and is limited to the twenty-four hours of Sunday. *Judefind v. State,* 78 Md. 510, 514.

In the legislation before us the inhibition is not general but is limited to the employees of a laundry after Sunday is at an end, and after the laborer has had his twenty-four hour period of rest. With the expiration of Sunday at midnight, the time of the worker is his own, and his right to labor, and his freedom to contract for his services, cannot be impaired when his employment is in a laundry, since that on this record is not so unhealthful an occupation as would authorize the legislation found in the present ordinance as reasonably necessary to protect the public health, safety, morals, or general welfare. *Yee Gee v. San Francisco,* 235 Fed. 757, 764; *Lochner v. New York,* 198 U. S. 45, 49 L. Ed. 937; *Adkins v. Children's Hospital,* 261 U. S. 525, 545, *et seq.; Adair v. United States,* 208 U. S. 161, 173, 52 L. Ed. 436, 442; *Muller v. Oregon,* 208 U. S. 412, 422, 52 L. Ed. 551, 556.

The third contention by the appellee is that the ordinance

will abate the nuisance created by noise in the running of the laundry, and by the operation of its wagons and motor trucks during the first six hours of Monday.

The manifest answer to this position is that the provision in controversy is not based upon any natural or fair classification, but is both unreasonable and unjustifiable. On the appellee's theory the objectionable noise mentioned is incident to the operation of a laundry during a like period no matter what may be the day of the week, yet the ordinance would make unlawful the conduct of one laundry during the first six hours of Monday while another laundry could carry on its work during a similar period of any subsequent day of the week without falling within the denunciation of the law. Again, by postponing their operation until after Monday, all the laundries would be at liberty uninterruptedly to disturb and annoy the public during a similar period for the remainder of the week. So, in no accurate sense may it be said that the measure tends to correct the evil, even if it should be assumed that one exists in a noise which is not caused by negligence or malfeasance, but which prevails as an incident of the industry and of sufficient magnitude to warrant municipal regulation of a lawful business in the interest of any paramount right of the public to live free of the inconvenience and discomfort of objectionable and excessive noise. See *Dittman v. Repp,* 50 Md. 522, 523; *Longley v. McGeoch,* 115 Md. 188; *Gallagher v. Flury,* 99 Md. 182; *Bonaparte v. Denmead,* 108 Md. 186; *Fertilizer Co. v. Spangler,* 86 Md. 568.

The reasonableness of the ordinance is to be adjudged by its purport and its effect, and its constitutionality is to be tested not only by what has been done, but what may be done, under its authority. *Levering v. Park Commissioners,* 134 Md. 48, 53; *Ulman v. Baltimore,* 72 Md. 587, 596; *Johns Hopkins Building Co. v. Baltimore,* 130 Md. 282, 286; *Curtis v. Mactier,* 115 Md. 386, 397; *Yick Wo v. Hopkins,* 118 U. S. 356, 373. The operation of the ordinance on this record does and could involve such oppressive, gratuitous

and unfair interference with the rights of the class subject to its provisions as can find no justification in the minds of reasonable men, and it becomes the duty of this Court to declare that the Legislature never intended to delegate authority to the Mayor and Council of Baltimore to pass an ordinance so restricting the operation of laundries during the first six hours of every Monday. To the extent of these six hours the ordinance is unreasonable and void, *supra;* and equity has jurisdiction to enjoin its enforcement during this period, because the interests of the appellant would be injuriously affected if it were. *Deems v. Baltimore,* 80 Md. 164, 172; *Baltimore v. Scharf,* 54 Md. 499, 526; *Baltimore v. Radecke,* 49 Md. 217, 232.

An examination of the cases on the appellee's brief discloses that the facts on which they were decided are different from those of the instant appeal and presented a proper basis for the exercise of the police power. But on the present appeal the ordinance fails to the extent indicated in this opinion, because, unlike the decisions cited by the appellee, the proposed regulation exceeds the legislative authority of the municipality in not having a real and substantial relation to the public safety, health, and welfare, and is fundamentally a futile and arbitrary act. In *State v. Potomac Coal Co.,* 116 Md. 380, at p. 397, this tribunal quoted with approval this sentence from Judge Cooley on Constitutional Limitations: "The Legislature may not under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual or unnecessary restrictions upon lawful occupation." *Byrne v. Realty Co.,* 129 Md. 210, 214; *Welch v. Swasey,* 214 U. S. 91, 53 L. Ed. 923, 929.

As a result of this opinion, the decree will be reversed, and the cause remanded.

> *Decree reversed, with costs, and cause remanded for the passage of a decree in conformity with this opinion.*